(No. 46067.—

ABDON RIOS, Appellant, v. NIAGARA MACHINE &
TOOL WORKS, Appellee.

*Opinion filed Sept. 27, 1974.—Rehearing denied Nov. 26, 1974.*

KLUCZYNSKI, J., dissenting.

Joseph A. Rosin, of Chicago, for appellant.

Clausen, Hirsh, Miller & Gorman, of Chicago (John R. Caffrey and James T. Ferrini, of counsel), for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This is a personal injury action based on strict tort liability. The plaintiff, Abdon Rios, was injured while operating a punch press manufactured by the defendant, Niagara Machine & Tool Works, and sold to plaintiff's employer, Hammond Organ Company. In his complaint plaintiff alleges that the machine was unreasonably dangerous because it was not equipped with appropriate safety devices. After a jury trial in the circuit court of Cook County the plaintiff was awarded $76,000 in damages. The appellate court reversed the judgment. (12 Ill. App. 3d 739.) We granted leave to appeal.

The machine involved, a punch press with a 45-ton capacity, was manufactured by Niagara in 1956 and sold to Hammond in the same year. The press was used by Hammond in manufacturing organ parts. During operation of the press, the ram, the movable part, descends upon the bottom of the press, the anvil, exerting up to 45 tons of

pressure. The ram descends only when the operator pushes a foot lever. Raw material is inserted between the ram and the anvil and is formed into a finished part by the pressure exerted by the ram. The shape of the part so produced is determined by the die set attached to the press by the user. When Niagara sold the press to Hammond no dies were attached. The dies in use at the time of plaintiff's injury were produced and attached by Hammond.

This press may be used in either a primary or a secondary operation. During primary operation raw material is fed into the machine by the operator. The machine operates automatically, the operator's only function being to make certain that there is an adequate supply of raw material. It is not necessary for the operator to place his hands near the working parts of the machine.

In the secondary operation parts previously prepared are finished. The operator's job is to place a part in the correct position in the lower die so that it will be properly fabricated when the ram descends. After setting the part the operator pushes a foot lever to activate the ram. The ram descends and lifts automatically, after which the finished part is removed by the operator. During secondary operation parts may be placed in the machine from the front, the rear, or the sides and the machine may be in an upright position or inclined toward the rear.

As sold by Niagara in 1956, the punch press was not equipped with any safety devices. Plaintiff's evidence showed that various safety devices were commonly used in the manufacturing industry to prevent injury to punch-press operators. Some of these devices are rather simple while others are extremely sophisticated. One device consists simply of two buttons which must be pushed by the operator to activate the ram. Some presses are equipped with movable guards which descend in front of the ram. Also available are devices which are attached to the operator himself and forcibly remove his hands from the area of the ram. All of these devices are designed to

assure that the operator's hands are removed from beneath the ram at the time of impact. None of these devices was incorporated into the press by Niagara. However, the machine did have a nonrepeat feature which prevented the ram from descending more than once each time the operator pressed the foot lever.

Although no safety device was attached to the machine by Niagara, safety devices were attached by Hammond. Hammond's fabricating superintendent, John Lang, testified that about 3000 primary and secondary operations are performed in Hammond's punch-press department. He stated that during primary operations no safety devices were necessary. However, he was of the opinion that secondary operations would be very dangerous unless safety devices were used. When used for secondary operations, Hammond equipped its punch presses with safety devices. Lang testified that the type of safety device to be used was determined by the nature of the die being used and the type of operation being performed. It was his job to determine what type of device was appropriate for each operation. At the time of the accident the press was equipped with a Posson safety device. This device was attached to the plaintiff and was designed to pull his hands away from the machine as the ram descended.

The plaintiff testified that at the time of the accident he was performing a secondary operation and had been working for about two hours. He was sitting on a chair facing the machine. The operation being performed required him to place a piece in the machine with his right hand, activate the press by stepping on the foot pedal, and remove the finished part with his left hand. He stated that he was attempting to remove a piece with his left hand when the ram unexpectedly descended a second time, severely injuring his hand. He stated that he had only pressed the foot pedal once. The parties stipulated that at the time of the accident the Posson safety device attached

to the plaintiff had broken and was inoperable. Lang testified that he examined the press after the accident and found that the nonrepeat cycle was working properly.

Plaintiff argues that the evidence presented at trial that the manufacturer had failed to equip the machine with a safety device was sufficient to establish a right to recovery on a strict-tort-liability theory, and contends that the appellate court erred in reversing the jury verdict. The defendant contends that the plaintiff failed to prove any of the elements of a strict-liability claim. It argues that the sole cause of plaintiff's accident was the failure of the safety device installed by Hammond.

In *Suvada v. White Motor Co.*, 32 Ill.2d 612, this court described the essential elements of strict tort liability. The plaintiff must prove that his injury "resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control." 32 Ill.2d at 623.

We think it is clear from the evidence that when used for secondary operations the punch press involved in this case was dangerous. Hammond's fabricating superintendent and an engineer called as an expert witness both testified that the press could not safely be used for secondary operations without the installation of a safety device. However, to establish liability in strict tort it is not sufficient that the plaintiff prove the product was dangerous; he must prove that it was unreasonably dangerous, or in other words not reasonably safe.

The appellate court found that the press was not unreasonably dangerous because it could be used for its primary operations safely even without any safety device. The court also noted that because the machine could be used for so many different operations and the nature of the operation would determine what type of safety device was appropriate, it would have been impossible for Niagara to equip the machine with a safety device which could be

used during all of its operations. For these reasons the court found that there was no duty upon the manufacturer to install a safety device. The court did not reach the question of whether the allegedly dangerous condition of the punch press was the cause of plaintiff's injury. We shall consider this aspect of the case first.

Prior to the trial of this action the parties stipulated that at the time of the accident, the Posson safety device attached to plaintiff's arms broke and did not pull his hands from underneath the descending ram. The sole proximate cause of this accident was, the defendant argues, the mechanical failure of this device which was attached by Hammond. Plaintiff argues that the malfunction of this device is not, as a matter of law, an intervening independent cause which will relieve defendant from liability for marketing an unreasonably dangerous machine because (1) the manufacturer is under a nondelegable duty to make its products safe for their intended uses and cannot expect others, such as plaintiff's employer, to remedy a dangerous condition existing when it left its control, and (2) it was foreseeable that safety devices installed by users of this machine might prove ineffective.

It has been recognized by other jurisdictions that one who markets an unreasonably dangerous product is not entitled to expect that others will make it safe. Even where he had reason to believe that others would make the product safe the manufacturer remains liable if the dangerous condition is not in fact corrected. (*Vandermark v. Ford Motor Co.* (1964), 61 Cal. 2d 256, 391 P.2d 168, 37 Cal. Rptr. 896; *Bexiga v. Havir Manufacturing Corp.* (1972), 60 N.J. 402, 290 A.2d 281.) In *Vandermark* the California Supreme Court held that the manufacturer of an automobile would be liable in strict tort for injuries attributable to a defect in the car existing when it left the manufacturer's control even though the manufacturer expected its authorized dealers to correct any defects

before selling the car.

In *Bexiga* the New Jersey Supreme Court stated that where a device is unreasonably dangerous absent a safety device, the manufacturer is under a nondelegable duty to install such a device. The court stated:

"The public interest in assuring that safety devices are installed demands more from the manufacturer than to permit him to leave such a critical phase of his manufacturing process to the haphazard conduct of the ultimate purchaser. The only way to be certain that such devices will be installed on all machines—which clearly the public interest requires—is to place the duty on the manufacturer where it is feasible for him to do so." (60 N.J. 402, 410, 290 A.2d 281, 285.)

In *Bexiga* there were no safety devices in the basic design of the machine and none had been installed prior to the accident. Also, the only literature accompanying the machine made no mention of the use of safety devices in its operation.

While we agree that a manufacturer is under a nondelegable duty to produce a product which is reasonably safe, that rule had no application to the facts of this case for the simple reason that a safety device was attached to this punch press by plaintiff's employer. This is not a case of operating the machine without a safety device as in *Bexiga*. The evidence indicates that the safety device selected by Hammond was one which was appropriate for the use being made of the machine by the plaintiff at the time of his accident, and there is no evidence that Hammond had installed a defective safety device. Once this device had been attached to the machine, whatever unreasonably dangerous conditions existed when it left the defendant's control by reason of the absence of safety devices were fully corrected.

The record contains no evidence as to why this safety device failed. There is only a stipulation previously

mentioned that the pull-back device had broken and failed to pull the plaintiff's hand from under the ram. Some reference was made by one attorney to the fact that a ram stud and nut had broken but this was not stipulated and there is no evidence supporting the statement. There could have been many causes for the failure of the safety device. Excessive wear, defective construction, improper maintenance, failure to properly attach it to the machine or a defect in the machine itself are all possibilities. Some of these causes could possibly support strict-liability recovery against Niagara. However, there is no evidence that the failure of the safety device was caused by the fact that the machine was not equipped with a safety device when it left Niagara's control, which is the unreasonably dangerous condition alleged in the complaint.

Strict liability under Restatement (Second) of Torts, section 402A, is premised on the supposition that the injury is caused by the unreasonably dangerous condition of the product. (*Suvada v. White Motor Co.*, 32 Ill.2d 612, 623; see also Wade, *Strict Tort Liability of Manufacturers* (1965), 19 Sw. L.J. 5, 22.) Since there is no evidence which causally connects the plaintiff's injury with the unreasonably dangerous condition of the machine alleged in the complaint he may therefore not recover against Niagara under the principles of strict tort liability.

Although not necessary to our decision we consider it appropriate to comment upon the statement of the appellate court that where machines are "multifunctional and where different types of safety devices would necessarily be required to obtain reasonable safety in performing these various functions, no duty should be imposed upon the manufacturer to provide any safety devices before the machine leaves his control." Suffice it to say that our affirmance of the appellate court judgment should not be construed as an acceptance of this theory. Although the multifunctional nature of a product would be a factor to consider in determining whether a product is unreason-

ably dangerous, it would not necessarily be decisive of that question.

The judgment of the appellate court is affirmed.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI, dissenting:

The majority has affirmed the appellate court on the narrow basis that "there is no evidence which causally connects plaintiff's injury with the unreasonably dangerous condition of the machine alleged in the complaint." The complaint in this cause, as indicated in the majority opinion, predicated defendant's liability upon the fact that the machine was unreasonably dangerous because of the defendant's failure to install safety devices when it was manufactured. The majority has reasoned, however, that if the machine was unreasonably dangerous at the time it was manufactured, any defect in this regard was fully remedied by Hammond's use of the Posson safety device even though this mechanism was broken and inoperable at the time of the accident.

Thus it would seem that the overall issue is whether a manufacturer who fails to install any safety device on a machine used in a dangerous operation may escape strict liability in tort when the purchaser attempts but fails to install an adequate safety mechanism for his employees.

The appellate court recognized the dangerous condition of the punch press when used for secondary manual operations without safety devices. (12 Ill. App. 3d at 744.) I am unconvinced that Hammond's furnishing of a detachable and possibly defective (broken) safety device is sufficient to obviate defendant's liability. There is no substantive distinction between the present case and those characterized by the majority opinion as holding "that one who markets an unreasonably dangerous product is not entitled to expect that others will make it safe. Even where he had reason to believe that others would make the product safe the manufacturer remains liable if the

dangerous condition is not in fact corrected." This interpretation clearly indicates that there is a nondelegable duty placed upon a manufacturer. Here, it is apparent that the dangerous condition of defendant's machine was not corrected.

In this case the real inquiry should be directed to whether it was foreseeable that plaintiff's employer might install an insufficient or defective safety mechanism, thereby requiring the defendant to include an adequate safety device aside from the so-called "nonrepeat feature" of the punch press. In *Winnett v. Winnett*, 57 Ill.2d 7, an action predicated upon strict tort liability was brought against the manufacturer of a farm implement to recover damages for injuries incurred by a young child when her hand came in contact with the machine while it was in operation. We noted that questions of the product's condition and foreseeability are usually questions of fact to be resolved by the jury. However, from the facts alleged in the complaint in that case we concluded that no recovery was possible due to the unforeseeability of the accident. In so holding we observed at pages 12-13, "Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur."

It is reasonable that from the evidence presented the jury may have considered that Hammond's use of an inoperable safety device and the resulting accident were "objectively reasonable to expect" and that defendant's failure to supply a suitable safety device rendered it liable to plaintiff. As the record indicates, the type of work being performed by plaintiff at the time of the accident required placing his hand in the area to remove the stamped product. The jury may well have concluded that installation of another safety mechanism, such as the movable guard device described in the majority opinion, might have been proper.

To accept the majority's rationale will be to insulate a manufacturer from liability on the fortuitous intervention

of the purchaser no matter how insufficient the purchaser's efforts in supplying an adequate safety mechanism for a machine which is designed to be used in a dangerous operation. I believe that the burden as to the installation of proper safety devices should not depend upon such circumstances. A manufacturer usually possesses greater expertise in the design and installation of safety devices, and it should thereby be required to install these items. If an injury occurs because the purchaser has installed an inoperative safety feature, the manufacturer should bear the burden of proving that it could not have installed a more effective safety device.