SAMUEL COLEMAN, Plaintiff-Appellant, *v.* VERSON ALLSTEEL PRESS COMPANY, Defendant-Appellee.

First District (1st Division)   No. 77-524

Opinion filed September 18, 1978.

Burke & Burke, Ltd., of Chicago (John M. Burke, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson, Richard E. Mueller and Hugh C. Griffin, of counsel), for appellee.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiff, Samuel Coleman, brought an action to recover damages for personal injuries he suffered while operating a machine manufactured by defendant, Verson Allsteel Press Company. The circuit court of Cook County entered summary judgment for the defendant and plaintiff appeals, contending that there were genuine issues of material fact to be resolved by a jury as to (1) whether the machine was defectively designed by reason of defendant's failure to provide a guard to prevent the

operator's hands from entering the die area, and (2) whether the machine was defectively designed by reason of defendant's failure to construct a machine on which the operating controls could not be altered to a more hazardous method of operation.

The machine involved was a Verson Press Brake, a large piece of industrial machinery used for shaping metal by means of a ram which descends into a die with enough speed and pressure to stamp out raw metal into a desired shape. It was manufactured by defendant between November 1950 and March 1951 and sold to plaintiff's employer shortly thereafter. As manufactured and delivered to plaintiff's employer, the press was actuated by means of six control buttons located at about shoulder height. Five of the buttons could be locked in a "run" position, but the sixth button could not be locked and was required to be pushed and held down each time the operator desired the machine to cycle. Furthermore, if the sixth button were released by the operator before the ram had traveled more than one-third of the way through its cycle, the ram would immediately stop its descent.

At the time of the accident, the press was not being operated by means of the shoulder-high buttons supplied by the defendant as original equipment. Instead, plaintiff's employer had substituted a control panel mounted on a pedestal and located "right beside" the loading area of the machine. On the panel were placed two "palm buttons," by means of which the operator engaged the cycle. At the time of the accident, one of these buttons was permanently fixed in the down position by tape or some other means, enabling the operator to cycle the machine by pressing only one button. This button was so connected to the machine that it was not required to be held down for any length of time in order for the ram to complete a cycle; the operator merely had to "hit" the button and immediately release it and the ram would descend fully and return to the starting position. The pedestal panel was placed in a position which required the operator to "lean over" it in order to load the machine. Defendant Verson had neither manufactured, designed, recommended nor installed the pedestal control panel.

On the day of the accident, plaintiff was operating the press to form metal television frames. He normally placed the unfinished piece of metal into the die area of the machine beneath the ram with his right hand, then removed his hand, then pressed the single palm button on the pedestal to activate the ram and waited for the machine to cycle. He then took another unfinished piece and repeated the procedure.

Plaintiff was injured when, after placing an unfinished piece on the die, he attempted to adjust it with his right hand and the ram simultaneously descended, injuring plaintiff severely. In his deposition, plaintiff stated that his left hand had been placed on the pedestal between the two

operating buttons and that his body "might have brushed across" the pedestal, located 3 to 4 inches from his standing position, when he reached into the die area to make the adjustment. In a statement made by plaintiff after the accident, however, plaintiff "guessed" that he had already pushed the button before he reached in to adjust the piece.

In support of its motion for summary judgment, defendant filed the written opinion of an expert employed by plaintiff to evaluate the defectiveness of the machine. This expert concluded that the operator's pedestal control buttons were the cause of plaintiff's injury and that these buttons were unsafe because they were not recessed or protected by ring guards or other commonly employed methods of preventing accidental depression. In response to the motion, plaintiff filed portions of the discovery depositions of two of defendant's employees, Cluck and Zeilenga. Cluck had testified that he had seen press brakes manufactured by defendant similar to the one involved here which had been altered by the purchasers to operate by means of foot pedals and pedestal palm buttons. He stated that the choice of how the machine would be operated was to be made by the purchaser and that an electrician could install a pedestal control like the one involved on the defendant's machine. Zeilenga was also aware of instances in which purchasers had altered the presses to be run by foot pedals or pedestal buttons and that such alterations would not be difficult for someone familiar with the machine to perform. Zeilenga testified that, as manufactured, the operating controls mounted at shoulder level was a safety feature of the press, because the operator could not have his hands in the die area when the machine cycled, since the hands would have to be on the buttons to make the press operate. He acknowledged that if a foot treadle or pedestal with buttons were attached and the original operating controls were bypassed or disengaged, the safety feature of the position of the original buttons would be eliminated.

Plaintiff's basic contention is that there was sufficient evidence presented in opposition to the motion for summary judgment to make the issue of defendant's liability a jury question. Plaintiff argues that it was reasonably foreseeable by defendant that the purchaser would alter the operating mechanism to overcome the safety feature of the buttons being placed at shoulder level and that, consequently, the machine was defectively designed, first, because it could be altered and, second, because there was no guard incorporated which would screen the operator's hands out of the die area no matter what operating mechanism was employed. Defendant argues that there was no jury question created by plaintiff and that as a matter of law it cannot be held liable because, first, there was no defect in the design of the machine as manufactured and delivered; second, the change of operating controls to the pedestal

buttons device was an intervening, material change in the condition of the machine and which, in fact, was the proximate cause of the injury to plaintiff; and, third, plaintiff presented no evidence that the absence of a guard across the die area was a defect which caused the press to be unreasonably dangerous.

■■ To impose strict liability on a manufacturer, a plaintiff must prove that his injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time it left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182.) The unreasonably dangerous condition may be the result of a design defect. *Williams v. Brown Manufacturing Co.* (1970), 45 Ill. 2d 418, 261 N.E.2d 305.

■■ A manufacturer is under a nondelegable duty to produce a product which is reasonably safe, but where the intervention of a third party's defective alteration of the product is itself unreasonably dangerous and causes the injury, the original manufacturer is not liable. In *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232, plaintiff was injured while operating a punch press which had been manufactured by defendant without any safety devices. However, plaintiff's employer had purchased and installed a safety device designed and intended to pull the operator's hands out of the die area whenever the machine cycled. Plaintiff was injured when the pull-back device broke and failed to pull his hand from under the ram. The supreme court affirmed the appellate court's reversal of a jury verdict for plaintiff because there was no evidence of a causal connection between plaintiff's injury and the unreasonably dangerous condition of the machine alleged in the complaint. 59 Ill. 2d 79, 86, 319 N.E.2d 232, 236.

In *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182, the supreme court approved the doctrine of strict liability as expressed in the Restatement (Second) of Torts §402A (1965):

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

We note that subsection (1)(b) requires as a condition precedent to liability that the product reach the user "without substantial change in the condition in which it is sold."

■■ We believe that the trial court correctly entered summary judgment for defendant in this case. The substitution of the pedestal-mounted control panel, by a third party, for defendant's shoulder-high activating controls, constituted a substantial change in the condition of the machine beyond the defendant's control. The affidavit of Zeilenga and the portion of his deposition submitted on the motion for summary judgment indicated his opinion that the press, as manufactured and delivered by defendant, was safe because of the positioning of the operating controls at shoulder height. Plaintiff's expert indicated that, in his opinion, the cause of the injury was the hazardous construction, design and placement of the pedestal control buttons. As in *Rios*, there was nothing produced by plaintiff to indicate the existence of evidence causally connecting the plaintiff's injury with the unreasonably dangerous condition of the machine alleged in the complaint.

■■ It was plaintiff's responsibility, on defendant's motion for summary judgment, to bring forth all facts and evidence that he believed would satisfy his burden of proving the existence of an unreasonably dangerous condition which existed at the time the product left defendant's control and which proximately caused the injury. (*Gordon v. Oak Park School District No. 97* (1974), 24 Ill. App. 3d 131, 136, 320 N.E.2d 389, 394.) Plaintiff failed to do so and cannot claim that at trial he could have produced witnesses to substantiate his claim. (*Gordon.*) There is nothing in this record to reveal that plaintiff needed additional time to complete discovery or preparation of his case before the motion for summary judgment was heard.

Two decisions of this court are cited by plaintiff to support his argument that the substitution of the pedestal-mounted and unguarded control buttons for the system supplied by defendant does not relieve defendant of liability. In *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 274 N.E.2d 828, the court affirmed a jury verdict against the defendant manufacturer of a plastic injection molding machine. Plaintiff was an operator who was injured when a piston rod in the hydraulic system fractured and the mold closed on his hand. The piston rod was a replacement item manufactured and installed by plaintiff's employer after the original rod, installed by the manufacturer, had earlier failed. We distinguish these facts from those present in the case under consideration, because in *Rivera* the evidence tended to show the existence of some defect in the original design of the machine which caused undue stress to be exerted on the piston rod. The defect was not superseded by the replacement of the original component when it failed,

and the court held it to be a jury question whether the original design defect also caused the failure of the replacement piston rod. The instant case reveals no causal connection between the defectiveness of the pedestal control panel and the original design of the machine.

Plaintiff also relies on *Wells v. Web Machinery Co.* (1974), 20 Ill. App. 3d 545, 315 N.E.2d 301, in which a jury verdict for plaintiff against defendant punch press manufacturer was affirmed. The evidence at trial tended to show that plaintiff's hands were injured when the machine unexpectedly cycled and continued to cycle due to the failure of a switch. The switch was a replacement component installed by plaintiff's employer, and defendant urged that this relieved it of liability. However, the evidence also revealed that the manufacturer had so designed and constructed the machine's electrical system that, if a switch failed, the machine would be continuously "on" rather than "off," and that this was a highly dangerous design defect which could have been easily and inexpensively avoided. Because this electrical circuit defect was also a proximate cause of the injury, the defectiveness of the substituted switch could not absolve the manufacturer of liability. Again, in the instant case, plaintiff submitted no evidence which tended to show that any of the defects alleged in the complaint against the defendant proximately caused his injury.

Defendant has directed our attention to *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 364 N.E.2d 267, in which the Supreme Court of Ohio affirmed a summary judgment for a punch press manufacturer under facts virtually indistinguishable from those presented here. Having examined the case, we agree with the principles enunciated therein.

■■ Lest we be misunderstood, all of the foregoing discussion applies fully to plaintiff's contention that the press as manufactured was defective for failure to incorporate guards between the operator and the die area. Plaintiff produced no evidence that this was a defect or that it proximately caused his injury. (*Gordon.*) Further, the installation of the defectively designed and positioned controls in place of the assertedly safe activating mechanism supplied by the manufacturer was the proximate cause of the injury. (*Rios*; Restatement (Second) of Torts §402A (1965).) And the manner in which this unfortunate injury occurred cannot be ignored. Plaintiff had deliberately placed his hand in the die area underneath the ram. He had either already "hit" the button on the pedestal, or he brushed across the buttons with his body after reaching into the die area. Under these circumstances, and in the absence of any evidence that a guard would have prevented plaintiff from deliberately placing his hand in the die area (which, it appears, would have prevented the operation of the machine for the purpose intended, because there would be no way to adjust the material in the die), there was no issue of material fact created

and defendant was entitled to judgment as a matter of law. Ill. Rev. Stat. 1975, ch. 110, par. 57.

The judgment of the circuit court of Cook County in favor of defendant is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.