JOHN EARL SMITH, Plaintiff-Appellee, *v.* VERSON ALLSTEEL PRESS COMPANY, Defendant-Appellant.—(MAJOR SPRING AND MANUFACTURING COMPANY, Defendant.)

First District (2nd Division)   No. 78-176

Opinion filed July 17, 1979.—Rehearing denied September 5, 1979.

Lord, Bissell and Brook, of Chicago (C. Roy Peterson, Hugh C. Griffin and Richard E. Mueller, of counsel), for appellant.

Leonard M. Ring and Associates, of Chicago (Leonard M. Ring and Ralph L. Brill, of counsel), for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, John Earl Smith, was injured when the brake spring broke on a press brake that he was operating in the course of his employment. Plaintiff brought this action in strict liability in tort against defendants Verson Allsteel Press Company (Verson), the manufacturer of the press brake, and Major Spring and Manufacturing Company (Major), the manufacturer of the brake spring.

The cause was tried to a jury in the circuit court of Cook County. The jury returned a verdict of $800,000 in favor of plaintiff against both defendants. Subsequent to the entry of judgment on the verdict, Major paid plaintiff $250,000 in exchange for execution of a document entitled "Loan Agreement." Verson's post-trial motions, including its motion for partial satisfaction of plaintiff's judgment, were denied. Verson appeals.

The issues are: (1) whether Verson was entitled to a directed verdict on the grounds that (a) the testimony established that the accident could not have happened in a manner consistent with plaintiff's testimony, and (b) plaintiff failed to prove that the accident would have occurred in the absence of a modification made by plaintiff's employer after the press had left the manufacturer's control; (2) whether the court erred in giving certain jury instructions and refusing others; (3) whether the court committed prejudicial error in its rulings on evidence relating to prior brake spring failures and subsequent design changes; (4) whether the court erred in instructing the jury on a theory without support in the evidence; and (5) whether the loan agreement is void and the money advanced to plaintiff by Major is a partial satisfaction of plaintiff's judgment.

The machine involved in this case was manufactured by Verson and sold to plaintiff's employer, Grand Sheet Metal Company, in 1945. The machine is known as a press brake. Its function is to bend and shape metal by means of a ram which descends into the bed of the machine, pressing raw metal between dies which form the metal into the desired shape. The

machine is electrically powered. Energy to move the ram is supplied by a flywheel, which rotates when the machine is turned on. The flywheel essentially stores energy, which it then imparts to the ram when the clutch is engaged. The clutch is linked and interlocked with a brake, so that whenever the clutch is engaged, the brake is released, allowing the press to operate continuously until the clutch is disengaged and the brake is applied.

As originally designed and sold by Verson, the press was operated by a foot treadle. When the foot treadle is depressed, it pulls a vertical clutch rod down. That action causes the clutch to engage and the brake to release, and the machine to function. When the operator removes his foot from the pedal, this removes pressure from a compression spring in the treadle linkage. A compression spring is a coiled spring that compresses in operation and expands back to its normal size when the machine is at rest. Thus, removal of pressure from the treadle causes the compressed spring to return the depressed pedal to its upright position as well as assist in disengaging the clutch by pulling back up on the vertical clutch rod. At the same time, four compression springs within the clutch itself initiate disengagement of the clutch.

Viewing the operation from the other end of the linkage, the movement of the vertical clutch rod when the operator steps on the foot treadle pulls on the brake spring, which controls the brake. The brake spring in the machine as manufactured by Verson was a tension spring. A tension spring is a more tightly wound coil that expands in operation and then returns back to its normal size when the machine's cycle is completed. Thus, the movement of the clutch rod when the foot treadle is depressed pulls on the brake spring and releases the brake. When the pedal is released, the additional tension on the brake spring is released and the brake spring contracts to its normal size, thereby applying the brake and also assisting in the disengagement of the clutch.

In 1965, plaintiff's employer modified the press's method of operation. For the mechanical foot treadle and the compression spring linkage leading to the clutch rod, plaintiff's employer substituted electrically operated palm buttons. Plaintiff elicited testimony that this modification was typical and in keeping with a trend in the industry toward safer operation of press brakes. The palm buttons are mounted on a pedestal at about the height and just to either side of the operator's waist. Pressure on the buttons activates a valve which causes air to pass into an air cylinder. This air pressure, then, instead of pressure from the operator's foot, pulls the clutch rod down, thereby engaging the clutch and releasing the brake. When the pressure is removed from the palm buttons, the air in the cylinder is immediately exhausted, the clutch rod is

no longer being pulled down, and that force, along with the forces in the clutch and the brake spring, causes the clutch to disengage and the brake to be applied.

Thus, the essential interrelationship of linkages remained the same after the modification, whether the clutch rod was being pulled down by pressure on the foot treadle or pressure in the air cylinder. Where the two methods of operation differed was when the pressure was removed. When the operator removed his foot from the foot treadle, the action of the compression spring in the treadle linkage expanding to its normal size returned the foot pedal, but also assisted the clutch springs and brake spring in the disengagement of the clutch. When pressure was removed from the palm buttons, there was no corresponding action in the air cylinder affirmatively assisting the clutch springs and brake spring in the disengagement of the clutch, but rather only the absence of air pressure pulling the clutch rod down. The assistance provided by the treadle spring in the original design was replaced by an increase in the assistance provided by the brake spring. This was accomplished by means of a slight change in the brake spring's mounting and an extension of its stroke, or the amount that it would stretch in operation, from ¼ or ½ inch to about 1.8 inches, in addition to its length of 6 inches as originally mounted. The machine was operated as so modified with no loss of speed or efficiency from about 1965 to the date of the occurrence on October 12, 1972.

On that day, plaintiff was 19 years old. He had just been hired and shown how to operate the press the day before. The procedure he followed was to load the machine from the left and push the palm buttons, causing the ram to come down and stamp out a finished piece. When the ram returned to the top of its cycle, plaintiff would release the palm buttons, causing the ram to stop. He would then unload the machine to the right and begin again.

The incident occurred sometime after 9 on the morning of plaintiff's second day, after he had formed about 80 pieces in the manner described. Plaintiff returned from a coffee break. He placed both hands on the palm buttons mounted on a pedestal between him and the press. The ram came down, stamped out a piece, and went back up. Plaintiff took his hands off the buttons as the ram reached the top and the ram stopped. Plaintiff was reaching in to remove the piece when he heard a psss sound, just as he did every time the ram began to descend. The ram came down and caught his hand between the dies. The ram continued to go up and down an indeterminate number of times until the power was cut off, plaintiff was pulled away, and the ram came to a stop.

Peter Riza, one of plaintiff's co-workers, was working 30-35 feet away from plaintiff when he heard a scream. He saw plaintiff standing in

front of the machine with his hands caught between the dies as the ram kept going up and down. Riza testified that the machine appeared to be repeating under power. He switched the machine off and the machine slowed to a stop. After plaintiff was taken away, Riza examined the machine and found that the brake spring had broken. He replaced the brake spring and tested the machine. The machine operated normally and the ram stopped instantly whenever he took his hands off the palm buttons.

Richard Jones, another co-worker, was about 50 feet away when he heard plaintiff scream. Jones saw that plaintiff was standing straight up, in the customary place, with the palm buttons mounted on the pedestal between him and the press. Plaintiff's hands were caught between the dies and the ram was going up and down. Jones first thought that plaintiff was in contact with the buttons, and that they were shocking him. Accordingly, he ran toward the machine and switched off the electrical power to the machine. He then came around to the front of the machine and saw that the ram was still going up and coming down on plaintiff's hands. He then pulled plaintiff away. He, too, observed the broken brake spring.

Not surprisingly, the parties had different theories, backed by expert testimony, of how and why the accident occurred. Plaintiff's basic theory was that the press brake contained defects which rendered it unreasonably dangerous at the time it left the manufacturer and which proximately caused plaintiff's injuries. Plaintiff introduced testimony tending to show, first, that the brake spring contained a heat treating crack from the time of its manufacture by Major for incorporation in the press by Verson; that this manufacturing defect caused the spring to undergo fatigue failure over a period of years; and that this fatigue failure ultimately caused the final break. Second, plaintiff introduced testimony showing that the press was defective in design, in that Verson employed a tension spring as a brake spring, rather than a compression spring. If a tension spring breaks, there is no longer any spring action whatsoever and whatever is being held or applied by the spring, such as the brake, will be completely released. On the other hand, if a compression spring being used as a brake spring were to break, the spring would lose only the force of the particular coil that fractured, and the remaining force of the compressed spring would be exerted to apply the brake and stop the machine. These are old and apparently well-known mechanical principles. Plaintiff also advanced the hypothesis, without any explicit testimonial support, that the press was defectively designed in that a double tension spring would have been safer than just one.

Verson's line of defense consisted of two basic contentions. First, Verson sought to establish that, with or without the subsequent modification of the press by plaintiff's employer, the broken spring could

not have caused the accident in a manner consistent with plaintiff's testimony. Second, Verson asserted that plaintiff failed to prove that the accident would have occurred on the press as originally manufactured by Verson, in the absence of the subsequent modification.

On appeal, Verson advances the same points. Its first argument, in more detail, is as follows. Plaintiff testified both at trial and in two depositions that before he reached into the machine just prior to the occurrence, the press had completed a cycle and the ram had stopped and locked in at the top position. There was expert testimony to the effect that the clutch had probably disengaged at that point and that for the ram to come down from that position and cycle repeatedly, the clutch would necessarily have to have become engaged. Since all agreed that the failure of the brake spring alone would not have caused the clutch to reengage, some other affirmative force must have caused it to do so. This force, Verson argued below and asserts once again, must have been plaintiff's body leaning on the pedestal buttons.

■■ However, as plaintiff points out, the problem with Verson's theory is that there is a paucity of evidence to support it. Besides the conclusions of the experts outlined above, Verson presented only the testimony of plaintiff's co-worker, Jones, that when he approached the machine he *thought* that plaintiff was in contact with the pedestal buttons. Yet Jones said plaintiff was standing straight up, and he pulled plaintiff away from the machine, but neither he nor anyone else testified that he saw any part of plaintiff's body touch the buttons. In addition, the jury was able to view an accurate model of the press brake as well as pictures of the pedestal-mounted controls, from which it could determine whether it was even possible for plaintiff, who was slight in build, to make contact with both buttons at the same time. Moreover, plaintiff offered expert testimony indicating how the failure of the brake spring could have caused the ram to descend whether the clutch was engaged or disengaged. If the clutch was disengaged and the ram had not stopped exactly at the top position, the fracture of the brake spring could cause the ram to fall of its own weight and rock or recycle once or twice before coming to rest. On the other hand, depending upon the adjustment and amount of wear on the clutch, the four springs in the clutch might not alone have fully disengaged the clutch, such that a fracture of the brake spring at that point would not only release the brake, but would prevent the brake spring from assisting in the disengagement of the clutch and bring the ram down under power. This testimony was sufficient for the jury to infer that the accident occurred due to the fracture of the brake spring, and the decision of the jury should not be set aside just because others might have drawn different inferences. *E.g., Lindroth v. Walgreen Co.* (1950), 407 Ill.

121, 133, 94 N.E.2d 847, cited in *Ohligschlager v. Proctor Community Hospital* (1973), 55 Ill. 2d 411, 419-20, 303 N.E.2d 392.

Neither can we accept Verson's contention that, even if the accident could not have happened in a manner consistent with plaintiff's testimony, plaintiff is necessarily bound thereby and barred from recovery. The operation of the press, both in general and on this particular occasion, was not a subject peculiarly within the knowledge of the newly hired plaintiff, nor were his statements "deliberate, clear, and unequivocal statements of facts * * *." (*E.g., Huber v. Black & White Cab Co.* (1958), 18 Ill. App. 2d 186, 190, 151 N.E.2d 641.) Rather, plaintiff admitted that he was confused about what happened, and he was neither able nor required to trace conclusively the series of events leading up to his injury. Resolution of any conflicts in the testimony was for the jury. (*E.g., Cochran v. Consumers Co.* (1972), 8 Ill. App. 3d 535, 291 N.E.2d 48 (abstract.)) The jury was not inclined to accept Verson's theory of the accident, nor, in the face of competing possible inferences, was the jury required to do so. Therefore, the court's denial of Verson's motions for directed verdict and judgment notwithstanding the verdict on this ground was proper. See *Lindroth v. Walgreen Co.* (1950), 407 Ill. 121, 133-35, 94 N.E.2d 847.

Verson's next argument is that plaintiff failed to prove that the accident would have occurred in the press as originally manufactured, absent the subsequent modification by plaintiff's employer. However, on this question, too, in the words of the court in *Pioneer Hi-Bred Corn Co. v. Northern Illinois Gas Co.* (1974), 16 Ill. App. 3d 638, 647, 306 N.E.2d 337, "[w]e believe plaintiff presented sufficient evidence of a defect and causation, although controverted, to allow these questions to go to the jury." Essentially, Verson argues that because the modification put additional stress on the brake spring, it was a sufficiently "substantial change" within the meaning of section 402A(1)(b) of the Restatement (Second) of Torts (1965) to constitute a superseding intervening cause, such that, as a matter of law, Verson could not be liable.

Plaintiff responds by pointing out that the employer's installation of palm buttons was itself a safety measure, meant to eliminate the obvious danger inherent in Verson's foot treadle design, in which an operator could accidentally start the press while his hands were in the die area. (See, *e.g., Scott v. Dreis & Krump Manufacturing Co.* (1975), 26 Ill. App. 3d 971, 326 N.E.2d 74 (jury could find that a similarly designed press brake was unreasonably dangerous).) Plaintiff argues that where a product is sold without a safety device, it is foreseeable that one will be added, and even if the alteration contributes to the injury, so long as it is not a superseding or the sole proximate cause of the injury, the manufacturer may still remain liable. See, *e.g., Capasso v. Minster Machine Co.* (3d Cir. 1976), 532 F.2d 952; *Hales v. Green Colonial, Inc.* (8th

Cir. 1974), 490 F.2d 1015; see generally 2 J. Dooley, Modern Tort Law §§32.06, 32.44 (1977); cf. *Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 369, 385 N.E.2d 690 (reasonably foreseeable misuse of product does not break the causal connection between the defective product and the plaintiff's injury).

■■ Under the circumstances of this case, we agree with plaintiff's argument and find that it is controlling. In opposition, Verson relies on *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232. In *Rios*, the plaintiff was injured when a safety device installed by his employer failed. The sole defect alleged in plaintiff's suit against the manufacturer was the manufacturer's failure to install safety devices. The court held that whatever unreasonably dangerous conditions existed when the machine left the manufacturer's control were fully corrected by the employer's addition of a safety device, the failure of which proximately caused the plaintiff's injury. (59 Ill. 2d 79, 85, 319 N.E.2d 232.) The court thereupon affirmed the reversal of a jury verdict for the plaintiff on the ground that there was no evidence of a causal connection between the plaintiff's injury and the unreasonably dangerous condition of the machine alleged in the complaint. 59 Ill. 2d 79, 86-87, 319 N.E.2d 232.

Unlike the complaint in *Rios*, however, the instant complaint did not merely allege a failure to install safety devices. Rather, plaintiff pleaded and offered evidence tending to prove that the machine in question left Verson's control containing additional defects of manufacture (the heat-treating crack) and design (use of a tension spring rather than a compression spring), and that these defects were causally related to plaintiff's injury. Thus, the instant case is more similar to the situations in *Wells v. Web Machinery Co.* (1974), 20 Ill. App. 3d 545, 315 N.E.2d 301, and *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 274 N.E.2d 828, in that while the modification by plaintiff's employer may have contributed to the failure of the brake spring, it was not the sole proximate cause thereof. Rather, plaintiff adduced sufficient evidence that the machine as manufactured and designed was unreasonably dangerous, and that these defects contributed in causing the injury, to warrant submission of the question of causation to the jury. *Cf. Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 368-69, 385 N.E.2d 690 (though testimony was conflicting, plaintiff adduced sufficient evidence of a design defect to make the question one of fact for the jury).

The other cases cited by Verson on this point are distinguishable. In *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36, the court found, as in *Rios*, that there was no evidence causally connecting the plaintiff's injury with the machine as manufactured. Rather, the plaintiff's injury was caused solely by controls defectively

designed and positioned by the plaintiff's employer. In *Southwire Co. v. Beloit Eastern Corp.* (E.D. Pa. 1974), 370 F. Supp. 842, the court, acting as trier of fact, found that the plaintiff had just barely failed to prove by a preponderance of the evidence that his injury was due, not to the changes in the machine made by his employer, but to a defect in the machine as manufactured. Similarly, in *Texas Metal Fabricating Co. v. Northern Gas Products Corp.* (10th Cir. 1968), 404 F.2d 921, the court found that there was "little or no question" that the alteration caused the accident. (404 F.2d 921, 925.) In contrast, in the instant case, while the modification by plaintiff's employer may have contributed to cause the injury by putting more stress on the brake spring, the jury could well find that the defective manufacture and design of the brake spring remained proximate causes of the accident. The trial court therefore properly denied Verson's motions for directed verdict and judgment notwithstanding the verdict on this point.

Verson next complains that the court erred in giving plaintiff's instruction No. 19 (Illinois Pattern Jury Instructions, Civil, No. 400.09 (2d ed. 1977 Supp.) (hereinafter cited as IPI Civil)) which provided:

> "If you decide that the plaintiff has proved all the propositions of his case, then it is not a defense that the defendant, Verson Allsteel Press Co., did not create the condition which rendered the brake spring unreasonably dangerous."

Verson contends that under this instruction, the jury could have been misled into holding Verson liable even if it was plaintiff's employer whose subsequent modification "create[d] the condition which rendered the brake spring unreasonably dangerous." Verson proposed two alternative instructions, not given by the court, which added the concept that the unreasonably dangerous condition must have existed at the time the product left the control of the defendants.

■█ ■ We find no error in the instructions as given. Plaintiff's instruction was proper against Verson as an intermediary or downstream assembler and distributor of the machine containing a spring manufactured, allegedly defectively, by Major. Moreover, the instruction given is prefaced, "If you decide that the plaintiff has proved all the propositions of this case, * * *." (IPI Civil No. 400.09.) The jury was expressly instructed that one of those propositions was "that the condition existed at the time the press brake or brake spring left the control of the defendant." (Plaintiff's instruction No. 12, IPI Civil No. 400.02 (2d ed. 1977 Supp.).) Taken as a whole, the instructions fairly and correctly stated the law and were sufficiently clear so as not to mislead the jury. See, *e.g., Cole v. Brundage* (1976), 36 Ill. App. 3d 782, 803, 807, 344 N.E.2d 583.

■█ Verson also contends that the trial court erred in its rulings on evidence relating to prior spring failures and subsequent design changes.

Verson first complains about plaintiff's interrogation of Verson's product manager as to whether springs are known to wear out or break in the course of use. However, we believe plaintiff had a right to elicit testimony from Verson that spring failures are foreseeable, in view of plaintiff's contention that use of a tension spring as a brake spring was unreasonably dangerous and constituted a defect in design; such foreseeability is often a tandem consideration in defective design cases. (See, *e.g., Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859). While the line of questioning could have been tied more closely to the facts at bar, it is difficult to see how Verson could have been prejudiced by introduction of the general proposition that springs sometime break in the course of use.

■■ Verson next argues that the court erred in refusing to permit inquiry of Verson's product manager as to whether he knew of any other failures in springs of the same type being used as brake springs. Generally, evidence of the absence of prior accidents is proper only if the offering party lays a proper foundation by establishing that such absence took place under conditions substantially similar to those surrounding the accident sued upon. (*Walker v. Trico Manufacturing Co.* (7th Cir. 1973), 487 F.2d 595, 599, *cert. denied* (1974), 415 U.S. 978, 39 L. Ed. 2d 873, 94 S. Ct. 1564.) While we agree that Verson laid more of a foundation for its question than plaintiff did for his question regarding spring failures in general, even assuming arguendo that it was error to exclude the proffered evidence, we do not believe that Verson was prejudiced thereby. For the jury to find the way it did, against both Major and Verson, the jury must have been persuaded that the defect in Major's manufacture of the spring was a cause of the accident, in which case Verson would be liable as an intermediary regardless of whether such an accident had ever occurred before. Therefore, exclusion of evidence of the absence of prior accidents could not have been prejudicial error.

■■■ Verson also contends that the court erred in permitting evidence of a Verson design change (from tension springs to compression springs) in its press brakes, without allowing Verson to show that safety was not the reason for the change. In the past, evidence of alternative designs and subsequent modifications was generally excluded in negligence cases. The reason was usually said to be to encourage precautions without subjecting defendants to possible admissions of fault. (*Sutkowski v. Universal Marion Corp.* (1972), 5 Ill. App. 3d 313, 318-19, 281 N.E.2d 749; 2 J. Dooley, Modern Tort Law §32.52, at 322 (1977).) However, in products liability cases brought on a defective design theory, evidence of design changes is relevant and admissible to show that alternative safer designs were feasible, and therefore that the product as designed was unreasonably dangerous. (*Sutkowski v. Universal Marion Corp.*; see, *e.g., Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.) Thus, evidence of

Verson's substitution of compression springs for tension springs for use as brake springs in its press brakes was properly admitted to show that the alternative design was feasible. We agree with plaintiff that the reason for the change has no relevance to the issue of its feasibility. Nevertheless, because the defective design area of products liability is an area in which concepts of negligence and fault remain pertinent (2 J. Dooley, Modern Tort Law §32.38 (1977)), and because evidence of the change was not admitted for a limited purpose, an inference that the change amounted to an admission of fault was still possible. Therefore, evidence of the reason for the change would be relevant to rebut any possible admission of liability, and such evidence should not have been excluded.

However, we cannot find that the exclusion requires reversal. In *Gaenzele v. B.E. Wallace Products Corp.* (1976), 39 Ill. App. 3d 93, 100, 350 N.E.2d 571, the only case cited by Verson on this point, the court held that exclusion of the reason for a subsequent design change was not reversible error where the fact of the design change was admitted. In the instant case, not only was the design change admitted, but Verson's expert offered testimony to the effect that the old tension spring design was safer than the compression spring design later substituted for it. Inferentially, then, Verson did introduce evidence that its design change was not due to safety considerations, and therefore the exclusion of direct testimony as to the reason for the change does not constitute reversible error.

Verson next argues that the court erred in instructing the jury on a theory without explicit support in the testimony. This theory was that the press was defective in design because a double tension spring would have been safer to use than just one. No one testified to that effect; in fact, the only mention of a double tension spring in the case was made by plaintiff's attorney in cross-examination of Verson's expert, who testified that a double spring would not have been safer. Verson contends that it is reversible error to submit a theory of liability to the jury without supporting facts in the record, citing, *e.g.*, *Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 879, 371 N.E.2d 692.

Plaintiff responds by citing *Mullen v. General Motors Corp.* (1975), 32 Ill. App. 3d 122, 131, 336 N.E.2d 338, where the court stated: "The weight of an expert opinion must be measured by the reasons given for the conclusion and the factual details marshalled to support it; it is entitled to little weight when it is inharmonious with the facts and physical evidence capable of verification by the court." Plaintiff impliedly argues that common sense supports the theory that it is safer to use two springs, each itself sufficient, rather than just one, so that if one breaks, there is still another to perform the desired function.

■■ Be that as it may, we believe that the jury should not be instructed on theories devoid of supporting facts affirmatively appearing in the record.

However, we cannot agree that it is invariably reversible error to do so. Rather, as the court said in *Darby v. Checker Co.* (1972), 6 Ill. App. 3d 188, 196, 285 N.E.2d 217, cited by the court in *Graves v. Wornson* (1978), 56 Ill. App. 3d 873, 879, 371 N.E.2d 692, in determining whether it is reversible or harmless, "a reviewing court must take into consideration the closeness of the evidence, the likelihood of the jury being confused and the possibility of prejudicial effect in submitting the unsupported issues to the jury." In the instant case, plaintiff had already introduced evidence sufficient for the jury to find that the brake spring contained a manufacturing defect and a different design defect (the use of a tension spring rather than a compression spring). Plaintiff's last minute "double tension spring" design defect theory was simple in itself, and we cannot find that it obscured the other issues in the case or confused the jury. Neither can we find that it may have affected the jury verdict or prejudiced Verson in any way. As we have noted, for the jury to have held Major liable, it must have found that the brake spring did contain a manufacturing defect, and on that basis alone Verson would be liable as the supplier of the spring. Therefore, any error committed by the court in submitting the double tension spring theory to the jury is not such as to require reversal for a new trial.

■■ Finally, we come to the issue of the post-judgment loan receipt agreement entered into by plaintiff and Major. In *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859, our supreme court recently made explicit "that the use of loan agreements is proper only where judgment has not been reached." Accordingly, Verson's contention that the loan agreement is void and the money advanced to plaintiff by Major is a partial satisfaction of plaintiff's judgment is well taken. 76 Ill. 2d 154, 170.

Accordingly, the judgment of the circuit court is reversed as to that part of the judgment denying Verson's post-trial motion seeking partial satisfaction of plaintiff's judgment. In all other respects, the judgment of the court below is affirmed.

Reversed in part; affirmed in part.

DOWNING and HARTMAN, JJ., concur.