DIANNIA GASDIEL, Plaintiff-Appellant, *v.* FEDERAL PRESS COMPANY *et al.*, Defendants-Appellees.—(REVCOR, INC., *et al.*, Defendants.)

First District (4th Division)   No. 77-1289

Opinion filed November 1, 1979.

Martin J. McGuire and William S. Keck, both of McGuire & Keck, Ltd., of Chicago (Sidney Z. Karasik, of counsel), for appellant.

Lord, Bissell & Brook, of Chicago (C. Roy Peterson, Hugh C. Griffin, and Kenneth R. Wylie, of counsel), for appellees.

Mr. JUSTICE LINN delivered the opinion of the court:

This is a personal injury action based on strict liability in tort against the manufacturer and distributor of a punch press and certain suppliers of component parts. Plaintiff, Diannia Gasdiel, injured her hand in the press when she slipped and accidentally activated a movable foot pedal that her employer had attached to the machine. The circuit court of Cook County granted summary judgment in favor of defendants, Federal Press Company (Federal) and Four States Machinery Company (Four States), the original manufacturer and distributor of the punch press.

On appeal, plaintiff contends that the record presents genuine issues of material fact for the jury, precluding an award of summary judgment in favor of Federal and Four States.

We affirm the decision of the trial court.

Plaintiff was employed part-time by Revcor, Inc., a manufacturing company. On January 9, 1973, she was assigned to operate a punch press which had been manufactured by defendant Federal and sold to Revcor by defendant Four States on October 31, 1967. Plaintiff had never before worked on the punch press and was instructed in its operation by a supervisor. The motor was turned on by pushing a button. Sheet metal would feed into the machine and stop at a certain point. The operator would then depress a movable foot pedal, attached to the press by flexible electrical cord, which caused a ram to descend and stamp out the product. The stamped piece would then automatically be pushed out of the left side of the die area where plaintiff would pick it up, inspect it and place it in a bin.

Plaintiff was instructed to wear pull away hand guards while operating the machine. The guards consisted of straps on each hand connected to a pole in such a manner that when the foot pedal was depressed the straps would automatically pull the operator's hands away from the machine.

Plaintiff began operating the machine but found that the metal product was of unacceptable quality. She then sought advice from the supervisor and foreman. Although she kept the hand guards attached while operating the machine, it was necessary to disconnect the guards so that she could leave the machine to seek assistance. Her foreman recommended various minor changes and told plaintiff to squirt the sheet metal with an oily substance contained in a squeeze bottle. This oily fluid spilled onto the floor along with the scrap metal.

When plaintiff continued to have difficulty with the finished pieces, she again unclipped the hand guards and walked over to discuss the

problem with a woman who had been operating the machine earlier that evening. While walking back to her machine, plaintiff slipped on the oily substance and other debris. Her foot accidentally depressed the foot pedal which had somehow been moved to the right side of the machine from its normal position on the left side. The punch press was activated and, in attempting to catch her balance, plaintiff's right hand was caught in the die. Plaintiff suffered amputation of her fingers and limited mobility in her right arm.

In addition to Federal and Four States, plaintiff's fourth amended complaint joined Positive Safety Manufacturing Company, Square D Company and Clark Controller Company as defendants based on allegations that these companies designed, manufactured, sold, distributed and installed certain switches, buttons, motor starters and alleged safety devices for the punch press. The complaint alleged that the punch press and its components were unreasonably dangerous for the following reasons:

"(a) The activating mechanism with which the press had been originally equipped by defendant was in fact a foot pedal, mechanical in nature operated by foot pressure; therein providing no protection for the hands of the operator at the point of operation;
(b) That no supplemental guideline device of any nature or kind had been installed by the manufacturer at the point of operation to protect the hands of the operator;
(c) Said machine was assembled improperly in that the foot pedal which operated said machine was open and bare, without a cover thereon, and would easily be turned to an 'on' position with the least movement on said machine;
(d) Said machine was assembled improperly in that the control mechanism of said machine could be moved from place to place without notice to persons using the machine and/or premises on which it was installed and they were not permanently attached to the flooring of the premises;
(e) Said machine and its component parts were assembled improperly in the buttons, levers and 'on-off' switches were open and bare without any cover or other safety device located thereon so that the punch press could easily be activated."

Federal and Four States moved for summary judgment. The motion stated that when the press was manufactured and sold by defendants to Revcor it was operated by depressing a mechanical foot pedal permanently attached to a bar near the base of the press. At the time the press left the control of defendants it was not equipped with an activating mechanism that could be moved from place to place on the floor, nor was

such a mechanism subsequently supplied to Revcor by defendants. Defendants further alleged that the press was equipped by them with pull-away hand guards which plaintiff had disconnected at the time of the accident. Defendants' contentions were supported by affidavit and portions of plaintiff's deposition testimony.

Plaintiff's response to the motion for summary judgment alleged that, besides the pull-away hand guards worn by the operator, the press was not equipped with point of operation safety devices which would protect a "bystander" from the type of injuries sustained by plaintiff. Attached to the response was the affidavit of plaintiff's attorney stating he had contacted an engineering expert who would testify that the failure to incorporate additional point of operation guards was a design defect.

On June 9, 1977, the trial court entered summary judgment in favor of Federal and Four States and, pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 304(a)), found no just reason to delay enforcement or appeal of the order.

## Opinion

■■ The primary function of the summary judgment procedure is to enable a court to determine whether there is any issue of fact to be tried by a jury. (*Doran v. Pullman Standard Car Manufacturing Co.* (1977), 45 Ill. App. 3d 981, 360 N.E.2d 440.) Summary judgment is to be granted only where the pleadings, affidavits and exhibits show there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Ill. Rev. Stat. 1977, ch. 110, par. 57.

Plaintiff contends that triable issues of fact are presented as to whether her injuries proximately resulted from a defect in the original design of the punch press. Plaintiff concedes that Federal and Four States are not responsible for the allegedly defective movable foot pedal, but argues that this was not the sole proximate cause of her injuries. It is plaintiff's position that defendants' failure to anticipate a modification in the operating mechanism and provide additional point of operation guards is a design defect which is causally related to her injuries. Defendants contend that modification of the foot pedal was a substantial change in the product produced and sold by them, constituting a superceding intervening cause of plaintiff's injuries.

■■ In order for a party to recover from a manufacturer based upon the theory of strict liability in tort, the plaintiff must prove that his injuries resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. (*Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 210 N.E.2d 182; *Dunham v. Vaughan & Bushnell Mfg. Co.* (1969), 42 Ill. 2d 339, 247 N.E.2d 401.) A manufacturer is under a

nondelegable duty to make a product which is reasonably safe (*Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690), and the unreasonably dangerous condition of the product may result from a design defect (*Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36).

■■■ Illinois has adopted the doctrine of strict liability set forth in section 402A of the Restatement (Second) of Torts (Restatement (Second) of Torts §402A (1965)). Strict liability under this section of the Restatement is premised on the supposition that the injury is caused by the unreasonably dangerous condition of the product. (*Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232.) By its terms, section 402A(b) imposes strict liability only where the defective product reaches "the user or consumer without substantial change in the condition in which it is sold." (Restatement (Second) of Torts §402A(b) (1965).) Where the intervention of a third party's defective alteration of the product is itself unreasonably dangerous and causes the injury, the original manufacturer is not liable. *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36.

It is undisputed that as originally designed, manufactured and sold by Federal and Four States, the punch press was operated with a mechanical foot pedal attached to a bar near the base of the press. In the original design, the operating mechanism could not be moved into areas other than where the operator stood to run the machine. Thus, the machine could not be accidentally activated by one who was not standing in the operator's position. In contrast, the movable foot pedal device substituted by plaintiff's employer was attached to the machine by flexible cable and could be moved to various locations on the floor near the machine. As modified, the activating mechanism could be accidentally moved into the path of bystanders or, as in this case, kicked by a person who was neither standing in place to operate the machine nor strapped into the point of operation safety guards provided by the original manufacturer.

■ It is our opinion that, within the meaning of section 402A(b), the substitution of a significantly different starting mechanism was a substantial change in the condition of the punch press as sold by Federal and Four States. This determination finds support in *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36, a case remarkably similar to the case before us. In *Coleman*, the plaintiff was injured by a descending ram while operating a press brake. As originally manufactured the press was operated by holding down one of a series of buttons on a shoulder high control panel. If this button was released before the press had completed a third of its cycle, the ram would immediately stop its descent. At the time of plaintiff's injury the press had

been modified to include a pedestal control panel which could be operated by pressing and releasing one "palm" button. On appeal from summary judgment in favor of the original manufacturer of the press, the appellate court affirmed, finding a substantial change in the original condition of the machine and no causal connection between the plaintiff's injuries and the condition of the press as originally manufactured.

The court in *Coleman* relied on the decision in *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 319 N.E.2d 232. In *Rios* the press was originally manufactured by defendant without any safety devices. Subsequently, plaintiff's employer installed a safety device to pull the operator's hands out of the die area. Plaintiff was injured when the safety device installed by his employer failed. The court held that whatever unreasonably dangerous conditions existed when the machine left the manufacturer's control were fully corrected by the employer's addition of a safety device, the failure of which proximately caused the plaintiff's injuries. The court affirmed the reversal of a jury verdict for plaintiff on the ground that there was no evidence of a causal connection between the plaintiff's injuries and the condition of the machine. Accord, *Hanlon v. Cyril Bath Co.* (3d Cir. 1975), 541 F.2d 343; *Temple v. Wean United, Inc.* (1977), 50 Ohio St. 2d 317, 364 N.E.2d 267.

Similarly, we find no causal connection between the lack of additional point-of-operation safety guards in the original design of the machine and plaintiff's injury. With regard to safety devices, plaintiff's complaint alleged that no guards had been installed by the manufacturer at the point of operation to protect the hands of the operator. Defendants' properly supported motion for summary judgment stated that the press was equipped with point-of-operation pull-away hand guards when sold to plaintiff's employer. In response to the motion for summary judgment plaintiff challenged defendants' failure to incorporate additional point of operation guards to protect "bystanders."

■■■ It was plaintiff's responsibility on defendants' motion for summary judgment to allege evidentiary facts that she believed would satisfy her burden of proving an unreasonably dangerous condition existed at the time the machine left defendants' control which proximately caused the injury. (*Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36.) Plaintiff's affidavit in opposition to the motion for summary judgment, signed only by plaintiff's attorney, stated that plaintiff could produce expert testimony to substantiate her claim of a defect in the original design. Because the evidentiary allegations in the affidavit were not within the personal knowledge of the affiant, the affidavit was not in compliance with Supreme Court Rule 191 (Ill. Rev. Stat. 1977, ch. 110A, par. 191), and the affidavit was insufficient to raise

any factual issue in opposition to defendants' motion for summary judgment.

Plaintiff cites numerous authorities for the proposition that a manufacturer of a product may remain a contributing cause of injuries sustained by its use if it is objectively reasonable to expect the manufacturer to have foreseen the dangerous condition. (See, *e.g., Anderson v. Hyster Co.* (1979), 74 Ill. 2d 364, 385 N.E.2d 690; *Wells v. Web Machinery Co.* (1974), 20 Ill. App. 3d 545, 315 N.E.2d 301; *Rivera v. Rockford Machine & Tool Co.* (1971), 1 Ill. App. 3d 641, 274 N.E.2d 828; see also *Smith v. Verson Allsteel Press Co.* (1979), 74 Ill. App. 3d 818, 393 N.E.2d 598.) These cases are distinguishable because in each the court found some evidence of a causal connection between the plaintiff's injury and an unreasonably dangerous condition attributable to the original manufacturer.

■■ We disagree with plaintiff's contention that the foreseeability of such an alteration was a question of fact for the jury: foreseeability may be decided as a matter of law where the facts demonstrate that plaintiff could never be entitled to recover. (*Mata v. Clark Equipment Co.* (1978), 58 Ill. App. 3d 418, 374 N.E.2d 763.) Here, as originally designed, the press could only be activated by a fixed mechanical pedal depressed by one standing in the operator's position—a position which was supplied with the protection of pull away hand guards. Only after the original mechanism was replaced by a movable foot pedal did the risk of accidental activation by someone not in the operator's position arise. It is our conclusion that the substitution of the movable foot pedal was a substantial change in the condition of the press as manufactured and sold by Federal and Four States and that, as a matter of law, the modification of the foot pedal was a superseding intervening cause of plaintiff's injuries.

The judgment of the circuit court of Cook County in favor of Federal and Four States is affirmed.

Affirmed.

JIGANTI, P. J., and ROMITI, J., concur.