LEONARD A. STANDO, Plaintiff-Appellant, *v.* GROSSINGER MOTOR SALES, INC., *et al.*, Defendants-Appellees.

First District (1st Division)    No. 79-2133

Opinion filed October 20, 1980.

Nolan, O'Malley & Dunne, of Chicago (Patrick W. Dunne, of counsel), for appellant.

Ruff & Grotefeld, Ltd., of Chicago (Edward P. Freud, of counsel), for appellee Grossinger Motor Sales, Inc.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Michael K. Murtaugh, and Richard H. Donohue, of counsel), for appellee Pontiac Motor Division of General Motors Corporation.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Leonard A. Stando (plaintiff) brought this action against Grossinger Motor Sales, Inc., Pontiac Motor Division of General Motors Corporation, Robert E. Berns and Swedish Covenant Hospital (defendants). The trial court allowed motions for summary judgment filed by Grossinger and Pontiac. Plaintiff has appealed. In this appeal we are not concerned with defendants Robert E. Berns or the Swedish Covenant Hospital. The necessary requisites for assertion of our jurisdiction as to the remaining parties have been fulfilled.

The first count of plaintiff's complaint is based upon a theory of strict liability against Pontiac and Grossinger. The record shows extensive discovery by interrogatories and depositions. The motions of Grossinger and Pontiac for summary judgment are predicated upon excerpts from the deposition of plaintiff. Plaintiff relies upon the same source.

The first count of plaintiff's complaint alleges that on or prior to June 19, 1974, plaintiff purchased a Pontiac automobile from Grossinger. The car had been manufactured by Pontiac. On June 19, 1974, while plaintiff was driving the automobile, the engine caught on fire. The car "was unreasonably dangerous" because it was assembled in such a manner as to allow a spontaneous fire in the engine; the carburetor leaked gasoline; the wiring was improperly placed in the engine area and the vehicle was otherwise negligently constructed as to allow a fire to occur.

It appears from the record plaintiff resides in Tinley Park. He is in the decorating business. Plaintiff purchased the Pontiac in new condition from Grossinger. Plaintiff's wife complained the car was not operating properly. She told plaintiff it was running rough and had a tendency to die. On June 19, 1974, six days after the purchase, plaintiff arranged to return the car to Grossinger because the engine was "vibrating" and not "running right." Plaintiff testified he made three business stops in Villa Park while driving the car. At that time everything about the automobile "seemed to be functioning."

Plaintiff then proceeded east on the Northwest Expressway toward Grossinger. Plaintiff has no recollection of what transpired for some time. He last remembered reaching Cumberland Avenue on the Northwest Expressway. He next remembered he was sitting in his car in an alley behind 4674 North Elston Avenue. This was some 20 blocks away from Grossinger. The car was full of smoke and was on fire. The engine was running. The smoke was greenish-gray. Fire was coming through the car. Plaintiff's shoes began to burn. Plaintiff got out of the left door of the car and stumbled around to the right side.

The defendant, Robert E. Berns, without speaking to plaintiff, struck plaintiff on the head with a yellow plastic baseball bat. Plaintiff remem-

bers nothing further until a police officer at the scene asked him if he was epileptic. The police drove plaintiff to Swedish Covenant Hospital. He was given first aid.

That afternoon plaintiff's wife took him home. On June 20, 1974, plaintiff was involved in an automobile accident. He stayed in a trauma center in Maywood for a week without treatment. Very shortly thereafter plaintiff was involved in an accident in Elmhurst when he drove his car into a fire hydrant.

Plaintiff testified that a few days after the fire plaintiff's wife spoke to several mechanics at Grossinger about the car. Plaintiff was not present. These mechanics did not say where or how the fire started. They merely said it was "super combustion." Plaintiff does not know the meaning of these words. He did not know the names of the mechanics or whether they were still working for Grossinger.

Plaintiff was examined by Dr. Frank DeVincenzo, a qualified neurosurgeon. The doctor gave plaintiff a complete neurological examination on August 23, 1974. This was about 60 days after the incident. The doctor testified there was no evidence of brain disorder or atrophy. In view of plaintiff's statement to the doctor that he had been struck by a baseball bat, the doctor diagnosed plaintiff's condition as a post-concussion brain syndrome. The doctor testified his final diagnosis was there was no anoxia (deficiency of oxygen) of the brain. The doctor referred plaintiff to a psychiatrist who diagnosed plaintiff's condition as a "personality disorder."

■■ Summary judgment procedure in Illinois is established by statute. (Ill. Rev. Stat. 1979, ch. 110, par. 57.) The motion may be made with or without supporting affidavits. The motion will be granted "'if the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact * * *.'" (*Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 320, 396 N.E.2d 524, quoting from *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.) The same authority states the converse. This court will reverse a summary judgment if we determine a material question of fact does exist.

■■■ It should also be remembered the issue of the existence or absence of a genuine issue of material fact must be determined from the various sources submitted by the parties in support of and contrary to the motion for summary judgment. In addition, we learn from *Carruthers v. B. C. Christopher & Co.* (1974), 57 Ill. 2d 376, 380, 313 N.E.2d 457:

> "If the party moving for summary judgment supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise genuine issues of material fact."

■■ In situations such as presented by the instant case, involving strict or

product liability, the duty of the plaintiff has been fully stated in *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182, and remains unchanged to this day:

> "The plaintiffs must prove that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control."

In this regard, the added requirement of proof that the defective condition of the product was the proximate cause of the injury or damage must be noted with care.

In *Rios v. Niagara Machine & Tool Works* (1974), 59 Ill. 2d 79, 86, 319 N.E.2d 232, the supreme court stressed the importance of proof of proximate cause which would connect the plaintiff's injury with the "unreasonably dangerous condition of the machine":

> "Strict liability under Restatement (Second) of Torts, section 402A, is premised on the supposition that the injury is caused by the unreasonably dangerous condition of the product."

■■ In the case before us we find a total lack of proof of the essential elements of liability. There is no sufficient direct or circumstantial proof in this entire record of any condition in the Pontiac automobile which could be defined as "unreasonably dangerous." There is no proof any such condition existed when the article left the control of the manufacturer. There is no proof of proximate cause of the fire which took place in the automobile. There is no proof that any injury to plaintiff resulted from any condition of the automobile. The vague references to alleged statements by various unknown and unidentified mechanics is not only pure hearsay but it is simply indefinite and cannot be classified as factual evidence of any of the elements of product liability.

In addition, Supreme Court Rule 191(a) provides affidavits in connection with a motion for summary judgment "shall be made on the personal knowledge of the affiants" and "shall affirmatively show that the affiant, if sworn as a witness, can testify competently thereto." (Ill. Rev. Stat. 1979, ch. 110A, par. 191(a).) In the case before us, the depositions substitute for the affidavits for and against summary judgment. The deposition materials depended upon by plaintiff do not meet these requirements. See *International Society for Krishna Consciousness, Inc. v. City of Evanston* (1977), 53 Ill. App. 3d 443, 454, 368 N.E.2d 644; *LaMonte v. City of Belleville* (1976), 41 Ill. App. 3d 697, 701, 355 N.E.2d 70; and *Anderson v. Dorick* (1975), 28 Ill. App. 3d 225, 227, 327 N.E.2d 541.

The situation in the case at bar is governed by three cases. In *Coleman v. Verson Allsteel Press Co.* (1978), 64 Ill. App. 3d 974, 382 N.E.2d 36, plaintiff sought to reverse a summary judgment for defend-

ant. Plaintiff had sustained personal injuries from a press manufactured by defendant but modified by plaintiff's employer after purchase from defendant. This court affirmed summary judgment in favor of defendant with this language (64 Ill. App. 3d 974, 979):

> "It was plaintiff's responsibility, on defendant's motion for summary judgment, to bring forth all facts and evidence that he believed would satisfy his burden of proving the existence of an unreasonably dangerous condition which existed at the time the product left defendant's control and which proximately caused the injury. (*Gordon v. Oak Park School District No. 97* (1974), 24 Ill. App. 3d 131, 136, 320 N.E.2d 389, 394.) Plaintiff failed to do so and cannot claim that at trial he could have produced witnesses to substantiate his claim. (*Gordon.*) There is nothing in this record to reveal that plaintiff needed additional time to complete discovery or preparation of his case before the motion for summary judgment was heard."

Similarly in *Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 392 N.E.2d 663, this court affirmed a summary judgment for a defendant brewery in a products case. It was plaintiff's theory that the brewery prepared, manufactured and distributed beer which was "in an unreasonably dangerous and unwholesome condition and that this condition proximately caused Kolibowski [the consumer] to become disoriented and dazed so that he lost control of his vehicle, striking and injuring plaintiff." (73 Ill. App. 3d 927, 930.) The court stated (73 Ill. App. 3d 927, 931):

> "A plaintiff in a strict liability action has the burden of proof to plead and prove every fact necessary to sustain his cause of action. [Citations.] That burden requires that the plaintiff prove 'that their injury or damage resulted from a condition of the product, that the condition was an unreasonably dangerous one and that the condition existed at the time it left the manufacturer's control.' [Citation.] While a plaintiff is not normally required to prove his case at this preliminary stage, he must present some facts which could be construed as supporting his allegations. [Citations.]"

Finally in *Schierer v. Ameritex Division, United Merchants & Manufacturers, Inc.* (1980), 81 Ill. App. 3d 90, 400 N.E.2d 1072, this court affirmed summary judgment in favor of defendant. Plaintiff had purchased a gas range from defendant. A child pulled a chair up and climbed on the stove. The stove ignited and she sustained injury from burns. This court held plaintiff had failed to provide any facts or evidence to prove the stove was unreasonably dangerous. The court pointed out the bare allegation the range was operated by a single-motion knob rather than a latching-type valve did not necessarily prove the stove was unreasonably

dangerous. The court also noted an occurrence of this kind was not reasonably foreseeable (81 Ill. App. 3d 90, 94):

> "We realize that the question of foreseeability is usually a jury question, but the facts in the present case compel us to rule that a jury could not find that the circumstances in the instant case were reasonably foreseeable to the seller of the stove. While in retrospect it can be argued that the unfortunate event in this case could conceivably occur, it can be argued that almost any occurrence is conceivable. To impose liability on such grounds would transform manufacturers and sellers into insurers of their products, a position rejected by *Suvada*. Thus, liability must be restricted to occurrences that are reasonably foreseeable, and in this case we believe that they were not. Since the accident did not occur within the stove's intended use, nor was the use which resulted in the injury reasonably foreseeable, we believe the trial court was correct in granting summary judgment for Sears."

Plaintiff relies extensively upon *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449. A comment is required. In that case, plaintiff, driving his automobile, approached an intersection. He stepped on the brake without result. The pedal went completely to the floor. Repeated braking and use of the mechanical emergency brake failed to reduce speed. The car went across the intersection and collided with a tree. The jury found in favor of plaintiff on a product liability theory. The supreme court affirmed.

These are the differences between *Tweedy* and the case at bar:

(1) Plaintiff there made a *prima facie* case the brakes were defective and the defect existed when the car left the manufacturer's control by showing that "in the absence of abnormal use or reasonable secondary causes the product failed" to perform reasonably in view of its nature and intended function. 64 Ill. 2d 570, 574.

(2) Plaintiff there introduced evidence of a prior "temporary failure of the brakes * * *." 64 Ill. 2d 570, 572.

(3) Other witnesses, not experts, testified to problems with the braking system which they noted upon examining the car after the occurrence. 64 Ill. 2d 570, 572-73.

(4) Plaintiff there offered direct evidence of the occurrence including proof of the malfunction of the brakes and their failure to perform in a normal manner. 64 Ill. 2d 570, 572-73.

*Tweedy* thus presents a complete contrast to the situation at bar. We have no evidence before us regarding the existence of any defect in the car or any causal connection between any defect and plaintiff's alleged injury. We thus have no basis for any possible inference that there was any defect of any kind in the automobile itself.

In *Millette v. Radosta* (1980), 84 Ill. App. 3d 5, 404 N.E.2d 823, cited by plaintiff in oral argument, the situation is comparable to that in *Tweedy*. As this court pointed out in *Millette*, there was direct testimony "that the steering suddenly failed and the failure caused the accident." Also, "beyond doubt," there was a defective part in the steering system when the car left the control of the manufacturer. *Millette*, 84 Ill. App. 3d 5, 21.

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

O'CONNOR and CAMPBELL, JJ., concur.