HELEN D'OLIER, Plaintiff-Appellant, v. GENERAL MOTORS CORPORATION *et al.*, Defendants-Appellees.

First District (4th Division)   No. 85—0888

Opinion filed June 12, 1986.

Donald F. Hemmesch, Jr., of Hollobow & Taslitz, of Chicago, for appellant.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Norman J. Barry, Jr., and Michael A. Pollard, of counsel), for appellee General Motors Corporation.

Jerome H. Torshen, Ltd., and Garretson & Santora, both of Chicago (Jerome H. Torshen, Abigail K. Spreyer, and Mark J. McCombs, of counsel), for appellee Fred James Buick, Inc.

JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Helen D'Olier, appeals from the trial court's decision granting the motions of defendants, General Motors Corporation and Fred James Buick, Inc., for a directed verdict. Plaintiff contends the trial court abused its discretion in granting defendants' motions for a directed verdict.

We affirm.

On March 11, 1981, plaintiff, who was driving, sustained various injuries in a single-vehicle accident. As a result of the accident, plaintiff, on October 7, 1982, filed this action. After various amendments to her complaint, plaintiff's case proceeded to trial as a strict liability and negligence action against General Motors and a negligence action against Fred James Buick.

In her strict liability claim against General Motors, plaintiff alleged

that the steering mechanism of the vehicle in question was defective and in unreasonably dangerous condition, and that General Motors' negligence, in designing and manufacturing the steering system, was the direct and proximate cause of her accident and injuries. In her count against Fred James Buick, plaintiff alleged that it was careless and negligent in the repair, inspection, testing, and maintenance of her vehicle, and that it carelessly and negligently installed defective fluid in the steering system, all of which were the direct and proximate cause of her accident and injuries.

At trial, plaintiff's case in chief consisted of the testimony of five witnesses: the plaintiff herself, who testified as to the accident; Wesley Gass, the owner of Wes' Service, who testified as to the storage of the vehicle; plaintiff's expert witness, Herbert J. Thomiszer; defendant's expert witness, Alfred C. Drouillard; and Tony D'Angelo, service manager at Fred James Buick, who testified as to the maintenance and repair of plaintiff's car.

Plaintiff testified that on March 11, 1981, she owned a 1978 Buick Regal manufactured by defendant General Motors. She had purchased the automobile, new, from Fred James Buick in August 1978 and had it serviced there, regularly. She stated that in the 2½ years prior to the accident, she neither had significant mechanical problems nor noticed any sign of potential mechanical trouble with her car. Plaintiff further testified that while driving east on Sibley Boulevard in Dolton the steering wheel of her auto locked as she changed lanes and she was unable to steer the car back to the right. As a result, her car crossed the westbound lanes and struck a signpost on the north side of the street.

Wesley Gass testified that plaintiff's car was towed from the site of the accident to the storage yard of Wes' Service. For six weeks it remained outdoors and unsheltered with its hood partially raised, which exposed the power steering mechanisms to the elements.

Plaintiff's expert witness, Hubert J. Thomiszer, concluded that somewhere in the steering system either the flow control valve or the spool valve was not functioning normally at the time of the accident. Thomiszer stated he could not dispute that the system had remained exposed to the elements for six weeks prior to the time the car was removed to Triodyne, Inc., for investigation by him. The witness admitted that his total knowledge and experience with respect to the actual design and fabrication of power steering systems were gained while employed at Triodyne, Inc., where he disassembled and inspected only two similar power steering systems.

Thomiszer testified to three "possible" causes of the alleged steering malfunction. First, he raised the possibility that particles of an O

ring found on a fitting of the power steering gearbox may have entered the system causing the alleged locking of the steering. Under questioning, the witness conceded that the O ring was foreign to the design of the steering system and that it was unlikely the O ring was placed in the system during the manufacturing process.

Second, Thomiszer raised the possibility that a brass tab found on the same fitting might have entered the system, thereby causing a malfunction. Under cross-examination, however, he acknowledged that he had failed to find fragments of the tab during his disassembly of the steering gear and pump. To the contrary, he testified that the tab and O ring were firmly attached to the fitting at the time of his investigation. He further said that the brass tab, like the O ring, was foreign to the design and manufacture of the vehicle.

Finally, Thomiszer raised the possibility that the power steering fluid might have become contaminated prior to the accident, thereby causing the alleged steering malfunction. The witness also stated, on cross-examination, that more likely than not the fluid was contaminated by the elements in the six weeks subsequent to the accident and prior to his examination.

Plaintiff called as an adverse witness, Alfred C. Drouillard, General Motors' expert, who testified that the steering system could not have become bound under the physical condition that existed on the day of the accident. Drouillard further testified that it was unlikely that particles from the O ring could have entered the steering system because its placement would have caused any particles to be forced outward rather than into the system. He concluded that the particles from the O ring or the brass tab did not jam or bind the flow control valve or the spool valve of the system as Thomiszer testified possibly occurred.

Tony D'Angelo, manager of the service department at Fred James Buick, testified that plaintiff brought her car to the company for maintenance on eight occasions. On those occasions during the 2½ years prior to the accident, plaintiff's car had no significant mechanical problems. The power steering fluid was checked and no problems were discovered. He further testified that any work done in the service department was written on a repair order—otherwise the mechanic performing the work would not be paid. The witness also stated that on one occasion plaintiff brought her car in to be serviced for which no repair order was written. He explained that her car door would not latch properly. Because he knew it took only a few seconds to repair the problem, there was no need to write out a repair order; and, since this is a frequent problem with many automobiles, the work is done as a courtesy to the customer.

After a review of the evidence, the trial judge directed a verdict in

defendants' favor. Plaintiff contends that the trial court abused its discretion in granting defendants' motion. We disagree.

A trial court can direct a verdict in those cases in which all of the evidence, when viewed in its aspects most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence can stand. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 222 N.E.2d 504, 513-14.

■ To establish a *prima facie* case in strict liability, plaintiff must adduce proof of three elements: (1) the injury resulted from a condition in the product, (2) the condition of the product was unreasonably dangerous, and (3) said condition existed at the time the product left the manufacturer's control. (*Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 931, 392 N.E.2d 663, 666.) A review of the record indicates that plaintiff offered no competent evidence to establish that a defect existed in her vehicle when it left the control of General Motors. The evidence presented by plaintiff only raised possibilities for the cause of the accident. Plaintiff is required to establish a probability, not merely a possibility of a defect. (See *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 313 N.E.2d 501.) Moreover, plaintiff did not show even a possibility that the alleged defects existed before the automobile left the control of General Motors.

■ Plaintiff's expert witness testified that the possible causes of the accident were probably not defects attributable to the assembly and manufacture of the automobile by General Motors. He admitted that the alleged defects in the vehicle were foreign to the manufacturing of the automobile and, in his opinion, entered the system after manufacturing. He further testified that the power steering fluid was most likely contaminated while exposed to the elements for six weeks subsequent to the accident. Further, plaintiff presented no evidence showing that the foreign parts entered the automobile's steering system between manufacture and transfer to Fred James Buick. A review of the testimony of plaintiff's expert witness, as well as other evidence, indicates that plaintiff did not present competent evidence showing that her vehicle was defective when it left the control of General Motors. Therefore, the trial court did not err in directing a verdict for General Motors. See *Rockett v. Chevrolet Motor Division, General Motors Corp.* (1975), 31 Ill. App. 3d 217, 334 N.E.2d 764; *Larson v. Thomashow* (1974), 17 Ill. App. 3d 208, 307 N.E.2d 707.

NEGLIGENCE COUNTS

■ For a defendant to be liable for negligence, he must have a duty towards plaintiff, he must breach that duty, and the breach must have been the proximate cause of plaintiff's injury. Plaintiff has the

burden of proof on each and every element. (*Johnson v. Burlington Northern, Inc.* (1982), 107 Ill. App. 3d 130, 136-37, 437 N.E.2d 334, 339.) The theory of plaintiff's negligence claims is that General Motors was negligent in the manufacture and design of the automobile and that Fred James Buick was negligent in the repair and inspection of her vehicle, and their negligence was the proximate cause of her accident.

■ Our review of the record reveals that plaintiff offered no competent evidence that General Motors was negligent in the design or manufacture of the vehicle. Plaintiff's primary evidence as to negligence in the design and manufacture of the automobile by General Motors is that of her expert witness, Thomiszer. Thomiszer, in his testimony, raised possibilities as to the cause of the accident. Merely speculating and raising possibilities as to the cause of an accident are insufficient to defeat a directed verdict after the close of plaintiff's case in chief. *Belleville National Savings Bank v. General Motors Corp.* (1974), 20 Ill. App. 3d 707, 711-12, 313 N.E.2d 631, 634-35.

Plaintiff's negligence action against Fred James Buick is similarly deficient. Plaintiff theorizes that because of negligence in the repair and inspection of her car, foreign elements found their way into the power steering system either through introduction by Fred James Buick or by its failure to discover them. However, our review of the testimony indicates that plaintiff presented no competent evidence to support her theory. Plaintiff's evidence and testimony from her expert witness speak of only possibilities.

■ The courts have often repeated that liability cannot be predicated upon surmise or conjecture as to the cause of the injury. (*Potter v. Edgar* (1975), 34 Ill. App. 3d 33, 36, 339 N.E.2d 321, 324.) Plaintiff's case is predicated on conjecture as to the cause of the accident. She has not sustained her burden of setting out a *prima facie* case of negligence and, therefore, it was proper for the trial court to direct the verdict in favor of Fred James Buick.

Since we affirm the trial court's decision in favor of the defendants, we need not address Fred James Buick's indemnity claim against General Motors concerning the above action.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN, P.J., and JIGANTI, J., concur.