MARIANNE F. ABEL *et al.*, as Co-Executors of the Last Will and Testament of Marie F. Caldwell, Deceased, Plaintiffs-Appellants, v. GENERAL MOTORS CORPORATION *et al.*, Defendants-Appellees.

Second District   Nos. 2—85—0850, 2—86—0361 cons.

Opinion filed May 7, 1987.—Rehearing denied June 5, 1987.

Joseph C. Owens, of Chicago, for appellants.

Hugh C. Griffin, David R. Reed, L. Anthony Lehr, Michelle T. Fisher, and Patricia S. Harris, all of Lord, Bissel & Brook, of Chicago, for appellee General Motors Corporation.

H. Anne McKee, David P. Meyer, and Peter G. Panno, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee Hejhal Oldsmobile, Inc.

Lynn R. Price and H. Evan Williams, both of McKenna, Storer, Rowe, White & Farrug, of Wheaton, for appellee Leslie Oldsmobile, Inc.

JUSTICE REINHARD delivered the opinion of the court:

Plaintiff, Marie F. Caldwell, filed a two-count complaint against defendants, General Motors Corporation, Hejhal Oldsmobile, Inc., and Leslie Oldsmobile, Inc., arising out of her accident while driving her Oldsmobile purchased from Hejhal Oldsmobile and serviced by Leslie Oldsmobile. The complaint stated a cause of action against all three defendants for strict products liability and negligence. Summary judgment was granted in favor of all three defendants on the strict liability counts and for General Motors and Hejhal Oldsmobile on the negligence counts. A subsequent order added the express finding of no just cause to delay enforcement or appeal of the order, and plaintiff filed a timely notice of appeal.

Later, Marianne and John Abel, co-executors of plaintiff's estate, were substituted as plaintiffs in this cause (Caldwell and the Abels are hereinafter collectively referred to as plaintiff) as Marie Caldwell died June 18, 1985, of causes unrelated to the accident. Leslie Oldsmobile thereafter filed a renewed motion for summary judgment on the remaining negligence count which was granted. Notice of appeal was

filed, and the appeals were consolidated by this court.

Plaintiff does not appeal the granting of summary judgment on the negligence counts in favor of General Motors and Hejhal Oldsmobile. In her appeal of the granting of summary judgment for all defendants on the strict liability counts, plaintiff essentially contends that summary judgment was improperly granted because genuine issues of material fact remain as to whether defects existed in the automobile at the time it left General Motors' control. Plaintiff's appeal of the granting of Leslie Oldsmobile's renewed motion for summary judgment on the negligence count against it raises two issues: (1) whether genuine issues of material fact exist to preclude summary judgment, and (2) whether this second summary judgment was void because the circuit court lost jurisdiction to enter that judgment pending the appeal on the first summary judgment order.

Plaintiff's complaint alleged that plaintiff purchased from Hejhal Oldsmobile on or about February 24, 1978, a new 1978 Oldsmobile Cutlass, which was manufactured by General Motors. She further alleged in the complaint that Leslie Oldsmobile and Hejhal Oldsmobile performed maintenance and repair work on the automobile from time to time and that after Leslie Oldsmobile gave the car a complete major tune-up and adjusted the shift linkage on April 13, 1981, the car would not always start up and move smoothly and controllably, but would leap forward or backward suddenly and uncontrollably. Plaintiff gave notice to Leslie Oldsmobile of this problem and returned the car in June 1981 for correction of the defect. This condition did not improve after returning the car, and it continued to lurch suddenly backward or forward from time to time when it started into motion. The complaint further stated that, before plaintiff could return the car to Leslie Oldsmobile again for additional work, she was notified by General Motors that she had to take the car to Hejhal Oldsmobile for safety recall modifications, which entailed the removal and replacement of the rear suspension bolts. She took the car to Hejhal Oldsmobile on June 29, 1981, and, after the work was completed, took possession of the car, which was left running, entered the car, stepped on the accelerator, and the car leapt forward faster than she could react to control it. As a result, the car struck another car and a light pole, and plaintiff suffered severe injuries.

She alleged that all three defendants are strictly liable, as the car was defective and not reasonably safe for its intended use because it lurched forward or backward, depending on which gear it was in, and also that all three defendants were negligent. Pertinent to this appeal, plaintiff alleged that Leslie Oldsmobile was negligent in failing

to properly service and/or repair the subject automobile in a manner to permit its safe operation and in failing to properly inspect and test the automobile after having performed services and/or repair work on it before redelivering it to plaintiff.

General Motors filed a motion for summary judgment which stated, in pertinent part as to the strict liability count, that there was no material issue of fact as plaintiff could not present evidentiary facts to show that the vehicle had a defect at the time it left General Motors' control causing it to lurch forward. Attached to the motion were excerpts from discovery depositions taken of plaintiff prior to her death and plaintiff's expert, Robert D. Harvey, a professor of engineering at the College of Du Page, Glen Ellyn, Illinois. In response to General Motors' motion, plaintiff filed additional excerpts from the two depositions.

Harvey stated in his deposition that he examined the automobile on July 13, 1981, that he examined all of the component parts of the accelerator system which he believed necessary to evaluate the system and found that all of the components moved freely, and that the brake pedal depression moved as he expected it to do. He did observe a limitation of travel of the throttle on the carburetor which he attributed to the deformation of the fire wall of the vehicle caused by the accident, which had caused the engine to be driven back against it. He did state, however, that he did not know the condition of the fire wall before the accident. He removed the carburetor and examined it in his home that evening. He did not observe any malfunctions of the carburetor. He wrote to plaintiff's attorney on September 6, 1983, regarding storing the carburetor and, receiving no immediate response, disposed of it at the end of 1983 or early 1984.

Plaintiff stated in her deposition that she lived near Leslie Oldsmobile and that she had all of her repair and maintenance work done there. Leslie Oldsmobile overhauled her carburetor in August 1980. She had her car "summerized" at Leslie on April 13, 1981, and, after that, the car just never acted right. The lurching began about two to three days after the "summerizing." She stated that she later took the car back to Leslie Oldsmobile. They kept it for two days, and she was told that quite a bit of adjustment was done on the car and that it should be perfectly all right. She was not billed for this adjustment. However, three days later the car started the same thing again. After she put it into drive or reverse, the car lurched forward or backward. She was unable to arrange a time to return the car to Leslie Oldsmobile for adjustment because of her work schedule and took the car to Hejhal Oldsmobile for recall repairs to the rear suspension bolts on

June 29, 1981, after receiving a telephone call from them. She did not discuss the lurching problem with anyone at Hejhal Oldsmobile. The parties agree that the automobile had been driven 16,216 miles at the time of the accident.

The trial court granted General Motors' motion for summary judgment and later granted similar motions filed by Hejhal Oldsmobile and Leslie Oldsmobile. The court found that the automobile did not display any unreasonable condition after it left General Motors, that there was a passage of time between the manufacture of the automobile and the accident, that intervening factors occurred by the mechanical repairs by Leslie Oldsmobile, and that plaintiff's expert's discarding of potentially defective parts deprived General Motors of its only opportunity to rebut the inference sought to be drawn by plaintiff. The court further stated that summary judgment was granted to Leslie Oldsmobile on the products liability count because pure services by an automobile repairman cannot be construed as a product. At that time, Leslie Oldsmobile's motion for summary judgment on the negligence count was denied because there were material issues of fact regarding Leslie Oldsmobile's negligence. That portion of the order granting summary judgment was made appealable by the inclusion of the finding that there was no just cause to delay enforcement or appeal. Plaintiff filed a notice of appeal.

Subsequently, plaintiff's attorney filed motions which stated that Marie Caldwell died June 18, 1985, and requested leave to substitute the co-executors of her estate, Marianne and John Abel, as plaintiffs. The trial court granted leave to substitute parties the same day.

Leslie Oldsmobile then filed a renewed motion for summary judgment on the remaining negligence count against it stating that the death of Marie Caldwell had altered the factual status of the litigation. Leslie Oldsmobile contended that, as plaintiff's deposition was a discovery deposition rather than an evidence deposition, it could not be used at trial in place of live testimony, and, therefore, plaintiff's deposition could not be considered in ruling on the renewed motion for summary judgment, so there was no issue of material fact. Attached to the motion were the affidavits of Ron Wynn, Leslie Oldsmobile's service director, and Phil Hairgrove, Leslie Oldsmobile's service manager. Both affidavits stated that plaintiff had never complained that her car "lurched" when put into gear. Also attached were service records for plaintiff's car, which reflected carburetor work done on August 6, 1980, and the last statement showed a major complete tune-up and an adjustment of the shift linkage on April 13, 1981. Excerpts of Professor Harvey's deposition previously in the rec-

ord were also adopted.

At a hearing held on the motion, plaintiff argued that the trial court had no jurisdiction because of the pending appeal. The trial court denied plaintiff's motion to strike Leslie Oldsmobile's motion for lack of jurisdiction and later granted Leslie Oldsmobile's motion for summary judgment as to the negligence count. The court stated that, as plaintiff's deposition cannot be used as an evidence deposition, there was no evidence to establish that Leslie Oldsmobile was negligent in any way.

Plaintiff maintains that summary judgment should not have been granted to General Motors and Hejhal Oldsmobile on the products liability count of the complaint because plaintiff presented enough evidence to raise an inference that the defect complained of had existed at the time the vehicle left the hands of the manufacturer. Plaintiff further states, citing *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449, and *Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 265 N.E.2d 212, that a specific defect in the product need not be shown and that she can rely on the inference that the product was defective when it left the manufacturer by showing the product malfunctioned when used in a normal manner and in the absence of secondary causes. In this regard, plaintiff contends that there is no evidence that she used the automobile in an abnormal manner and that there is no evidence of any reasonable secondary causes of the malfunction of her automobile.

It is well settled that a plaintiff seeking to impose strict products liability on a manufacturer is required to prove that his or her injury resulted from the unreasonably dangerous condition of the product and that the unreasonably dangerous condition existed when the product left the manufacturer's control. (*Coney v. J.L.G. Industries, Inc.* (1983), 97 Ill. 2d 104, 111, 454 N.E.2d 197; *Suvada v. White Motor Co.* (1965), 32 Ill. 2d 612, 623, 210 N.E.2d 182; *Mazikoske v. Firestone Tire & Rubber Co.* (1986), 149 Ill. App. 3d 166, 174, 500 N.E.2d 622.) These elements may be proved inferentially by either direct or circumstantial evidence. (*Bejda v. SGL Industries, Inc.* (1980), 82 Ill. 2d 322, 330, 412 N.E.2d 464.) Our supreme court has held that a *prima facie* case that a product was defective and that the defect existed when it left the manufacturer's control is made by proof that in the absence of abnormal use or reasonable secondary causes the product failed to perform in the manner reasonably to be expected in light of its nature and intended function. (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 574, 357 N.E.2d 449.) Although this is a case determined by summary judgment and only a

genuine issue of material fact need be shown to exist to deny a motion for summary judgment, as contrasted to a *prima facie* case in certain other situations, the same principle regarding the failure of the product applies. (See, *e.g.*, *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1059-60, 473 N.E.2d 444; *Vuletich v. Alivotvodic* (1979), 73 Ill. App. 3d 927, 932, 392 N.E.2d 663.) Proof of the specific defect which causes the product to be in an unreasonably dangerous condition is not necessary. (*Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 849-50, 265 N.E.2d 212.) However, imposition of strict liability was not meant to make the manufacturer an absolute insurer. *Coney v. J.L.G. Industries* (1983), 97 Ill. 2d 104, 111, 454 N.E.2d 197.

The facts of *Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 357 N.E.2d 449, and *Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 265 N.E.2d 212, both relied on by plaintiff, are distinguishable from the situation presented here. In *Tweedy*, the supreme court affirmed a verdict for the plaintiff for injuries suffered in an accident involving a relatively new car with only 7,500 miles on it. The plaintiff testified that, prior to the accident, he attempted to slow down and the brake pedal went completely to the floor without any noticeable resistance. His daughter testified that she had experienced a temporary brake failure several hours prior to the accident. (*Tweedy v. Wright Ford Sales, Inc.* (1976), 64 Ill. 2d 570, 572, 357 N.E.2d 449.) Significantly, although no evidence was presented of any specific defect in the brake system of the car, the plaintiff did present evidence of a malfunction of the brake system, and there was no evidence of any reasonable secondary cause.

Similarly, in *Bollmeier*, the appellate court reversed a directed verdict for the defendant on the issue of breach of implied warranty where the evidence showed that the accident occurred when a three-month-old car would not respond to the turning of its steering wheel and that the car had a noticeable vibration in its steering column and steering wheel from the time it was delivered. (*Bollmeier v. Ford Motor Co.* (1970), 130 Ill. App. 2d 844, 846, 265 N.E.2d 212.) There, also, the circumstantial evidence showed that a defect existed in the car's steering system which was not reasonably explained by other causes.

We have also reviewed the recent case of *Hill v. International Harvester Co.* (7th Cir. 1986), 798 F.2d 256, referred to us in oral argument. There, Hill, who was the driver of a truck manufactured by the defendant therein, testified that while driving a 1979 truck tractor with 225,000 miles on August 16, 1980, he heard a snap and the truck veered to the left, causing the accident. No other specific evidence

was offered as to the cause of the occurrence, although plaintiff submitted the records of maintenance of the truck. After a jury verdict for plaintiff, defendant appealed contending that plaintiff failed to present sufficient evidence to support the jury's finding that the truck was defective or that the defect existed at the time the truck left its control. The United States Court of Appeals for the Seventh Circuit held that the plaintiff's testimony regarding the accident and the documentary evidence that the truck had been well maintained was sufficient to negate inferences of equipment abuse and reasonable secondary causes. While the court noted that the possibility of secondary causes was somewhat greater there than in *Tweedy*, this was not sufficient to justify setting aside the jury's verdict. (798 F.2d 256, 258-60.) For the reasons that follow, we do not find this decision factually supportive of plaintiff's position.

The facts of this case are more similar to those in two recent appellate court decisions. In *D'Olier v. General Motors Corp.* (1986), 145 Ill. App. 3d 543, 495 N.E.2d 1040, the appellate court affirmed a directed verdict for a car manufacturer where it was alleged that the steering locked on a 2½-year-old car, causing an accident. The plaintiff's expert, who examined the car six weeks after the accident during which time it was exposed to the elements, testified as to three "possible" causes of the alleged steering malfunction. The court concluded that the plaintiff offered no competent evidence to establish that a defect existed in her vehicle when it left the manufacturer's control and only raised possibilities for the cause of the accident rather than probabilities. 145 Ill. App. 3d 543, 545-47, 495 N.E.2d 1040.

Also, in *Strotman v. K.C. Summers Buick, Inc.* (1986), 141 Ill. App. 3d 8, 489 N.E.2d 1148, the court affirmed the dismissal of plaintiffs' cause of action seeking recovery for an accident where a new car purchased on July 30, 1980, overturned on August 21, 1980. The plaintiffs' complaint alleged that " '[a] defect existed in said motor vehicle, the identity of which is unknown to this Plaintiff, which caused said motor vehicle to start turning to the right (clockwise) without any apparent cause, while being driven on cruise control at about 55 miles per hour.' " (141 Ill. App. 3d 8, 10, 489 N.E.2d 1148.) The court determined that *Tweedy* does not suggest that a plaintiff need not plead or prove facts supporting an inference of defect. (141 Ill. App. 3d 8, 11, 489 N.E.2d 1148.) The court stated that plaintiffs did not allege specific facts from which one might infer the existence of a defect.

In the case at bar, plaintiff introduced no evidence in the

summary judgment proceeding of the cause for the automobile's lurching forward and backward, which she alleges resulted in her accident. On the other hand, defendants submitted deposition evidence from plaintiff and an expert hired by plaintiff to examine her automobile after the accident which reveals that for over three years she drove this automobile without experiencing the lurching problem which she says caused the accident, that the lurching first appeared after the automobile was tuned-up at Leslie Oldsmobile shortly before the accident, and that plaintiff's expert failed to find any defect existing in the accelerator pedal and pedal lever, brake pedal and parking brake, the throttle cable, and the carburetor and its component parts that could have caused the accident. Unlike the *Tweedy*, *Bollmeier*, and *Hill* cases, there is evidence here of a reasonable secondary cause of the accident, the first appearance of lurching after servicing in April 1981 by Leslie Oldsmobile some three years after the purchase of the automobile. Similar to *D'Olier* and *Strotman*, there are no facts from which it can be inferred that a defect existed in her automobile when it left General Motors' control. Plaintiff has failed to present any evidence to raise a question of fact as to the absence of a reasonable secondary cause. See *Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1059-60, 473 N.E.2d 444.

Plaintiff maintains, however, that at this stage of the proceedings she clearly has the right to rely on the inference that the defect complained of existed from the time the vehicle left General Motors' control and that no favorable inference for defendants is proper from the fact that plaintiff owned the automobile for three years before she had problems with lurching. Plaintiff cites the well-known rule that in a summary judgment proceeding the court must construe the pleadings, depositions, and affidavits strictly against the movant and liberally in favor of the opponent. See *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.

If a fair-minded person may draw different inferences from the undisputed facts, summary judgment cannot be granted. (*Consolino v. Thompson* (1984), 127 Ill. App. 3d 31, 33, 468 N.E.2d 422.) But, in order to draw other inferences, the evidence presented must only be of such a character that the inference drawn is reasonable. (127 Ill. App. 3d 31, 33, 468 N.E.2d 422.) What is considered sufficient evidence in order to draw a reasonable inference does not lend itself to precise definition, but must depend on the individual case and the nature of the evidence at hand. (127 Ill. App. 3d 31, 33-34, 468 N.E.2d 422.) Viewing the evidence liberally in favor of the plaintiff, we conclude that a reasonable inference cannot be made that any de-

fect existed in the automobile at the time it left General Motors' control. Therefore, the motion for summary judgment was properly granted for General Motors and Hejhal Oldsmobile.

Plaintiff next claims that summary judgment should not have been granted for Leslie Oldsmobile because courts have not treated installers of mechanical devices as suppliers of services only and have found them to be subject to the rule of strict products liability. They cite *Court v. Grzelinski* (1978), 72 Ill. 2d 141, 379 N.E.2d 281, *Brannon v. Southern Illinois Hospital Corp.* (1978), 69 Ill. App. 3d 1, 386 N.E.2d 1126, and *Woodrick v. Smith Gas Service, Inc.* (1967), 87 Ill. App. 2d 88, 230 N.E.2d 508. The three cases cited are distinguishable from the factual situation here, and the argument is not persuasive. In the cases relied on, the defendant was found subject to liability as the installer of a defective product. In *Court*, the plaintiff alleged that the defendant defectively assembled, installed, and positioned a gas tank, causing an explosion. (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 145-46, 379 N.E.2d 281.) In *Brannon*, the defendant was found to be liable for installing a dumbwaiter in an unreasonably dangerous condition. (*Brannon v. Southern Illinois Hospital Corp.* (1978), 69 Ill. App. 3d 1, 5-6, 386 N.E.2d 1126.) In *Woodrick*, the defendant had installed a device known as "auto start," which caused the plaintiff's car to accelerate to 100 miles per hour after she let up on the accelerator. *Woodrick v. Smith Gas Service, Inc.* (1967), 87 Ill. App. 2d 88, 91-92, 230 N.E.2d 508.

In the products liability context, a legal duty is imposed upon those involved in the original production and marketing chain of a product (*Court v. Grzelinski* (1978), 72 Ill. 2d 141, 379 N.E.2d 281), and it is necessary that the defendant be in the business of placing the product in the stream of commerce (*Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 221, 490 N.E.2d 104). While the installer of a product can be held strictly liable for a defect in the product (*Brannon v. Southern Illinois Hospital Corp.* (1978), 69 Ill. App. 3d 1, 6, 386 N.E.2d 1126), there must be a causal relationship between the injury and the product (*Kramer v. Weedhopper of Utah, Inc.* (1986), 141 Ill. App. 3d 217, 221, 490 N.E.2d 104; *Stando v. Grossinger Motor Sales, Inc.* (1980), 89 Ill. App. 3d 898, 901, 412 N.E.2d 600). On the other hand, Illinois has not extended the doctrine of strict liability to include services. *Immergluck v. Ridgeview House, Inc.* (1977), 53 Ill. App. 3d 472, 475, 368 N.E.2d 803; see also *Dubin v. Michael Reese Hospital & Medical Center* (1979), 74 Ill. App. 3d 932, 944, 393 N.E.2d 588, *rev'd on other grounds* (1980), 83 Ill. 2d 277, 415 N.E.2d 350.

■ Here, plaintiff has not alleged any defective product installed by defendant Leslie Oldsmobile which caused her accident. The only allegations in the complaint relative to the lurching problem are that Leslie Oldsmobile gave the car a complete major tune-up and adjusted the shift linkage on April 13, 1981. It is obvious that any alleged defective product that existed at the time it left General Motors' control and for which plaintiff sought recovery against General Motors and Hejhal Oldsmobile, the distributor, cannot be the basis for the claim against Leslie Oldsmobile. The assertion of strict liability against Leslie Oldsmobile as to the lurching problem essentially is premised on the tune-up performed on April 13, 1981. There is no direct evidence or inference to be drawn from the depositions and pleadings that Leslie Oldsmobile installed a product that was defective. The most favorable inference which can be made for plaintiff is that the car lurched for the first time after the tune-up and that this resulted from service performed by Leslie Oldsmobile. As we have previously stated, the doctrine of strict products liability has not been extended to include services. While the negligent performance of services may constitute common law negligence, as we will next discuss, the trial court correctly determined, under the pleadings and depositions here, that there was no genuine issue of material fact so that summary judgment was properly granted to Leslie Oldsmobile on the products liability count.

■ Plaintiff next contends in the appeal from the granting of summary judgment for Leslie Oldsmobile on the negligence count that the trial court erred because the court erroneously based its inquiry on whether the plaintiff could produce evidence to support an allegation of Leslie Oldsmobile's negligence at trial rather than whether an issue of material fact exists on the pleadings and depositions as to the negligence of Leslie Oldsmobile.

The trial court originally denied Leslie Oldsmobile's motion for summary judgment on the negligence count of plaintiff's complaint, finding that the facts of the occurrence tend to create a question of fact as to Leslie Oldsmobile's negligence. At that time, excerpts from plaintiff's deposition regarding her discovery of the lurching problem after servicing by Leslie Oldsmobile and its subsequent failure to correct that problem, which allegedly caused the accident, created material issues of fact as to negligent servicing of the automobile. Leslie Oldsmobile later, after it became aware of the plaintiff's death, filed a renewed motion for summary judgment, stating that her death dramatically altered the factual status of the litigation as her deposition could not be used at trial and, therefore, could not be considered in

ruling on the motion for summary judgment. Leslie Oldsmobile contended in the motion that the complaint specifically alleged that plaintiff gave notice to Leslie Oldsmobile of the lurching condition, that Leslie Oldsmobile failed to discover the cause of the lurching condition and failed to repair the condition, and that the accident resulted from those alleged negligent acts. Leslie Oldsmobile attached the affidavits of two of its employees stating that plaintiff had never complained that her car lurched when put in gear. Plaintiff first responded to the motion by challenging the trial court's jurisdiction to decide the motion because of the pending appeal of the summary judgment on the strict liability counts. The trial court found it had jurisdiction and granted the motion stating that as plaintiff's deposition could not be used as an evidence deposition, there was no evidence to establish that Leslie Oldsmobile was negligent in any way.

On appeal, plaintiff contends both that the trial court did not have jurisdiction to rule on the renewed motion for summary judgment because of the pending appeal of the prior grant of summary judgment and that a genuine issue of material fact existed precluding the proper entry of summary judgment.

As to the jurisdictional issue, plaintiff contends that once she filed notice of appeal from the granting of summary judgment on the strict liability counts and the negligence counts as to General Motors and Hejhal Oldsmobile, the circuit court lost jurisdiction to further proceed on the remaining negligence count against Leslie Oldsmobile. Although agreeing that two causes of action exist against each of the defendants, plaintiff maintains that where the same parties and issues of fact exist there can only be one trial, and the circuit court could not proceed while the appeal was pending.

Supreme Court Rule 304(a) provides for appeal from final judgments that do not dispose of an entire proceeding where multiple parties of multiple claims for relief are involved and the trial court makes an express written finding that there is no just reason for delaying enforcement or appeal. (103 Ill. 2d R. 304(a).) A strict products liability claim and a claim based on common law negligence constitute distinct causes of action (*Freeman v. White Way Sign & Maintenance Co.* (1980), 82 Ill. App. 3d 884, 890-91, 403 N.E.2d 495), and the mere fact that the dismissed count and the remaining counts arise from the same occurrence is not fatal to an appeal (*McGrew v. Heinold Commodities, Inc.* (1986), 147 Ill. App. 3d 104, 109, 497 N.E.2d 424). Thus, the summary judgment on the strict liability count against Leslie Oldsmobile was properly appealable under Rule 304(a) as the trial judge found no just reason for delaying enforcement or appeal.

Plaintiff's common law negligence claim against Leslie Oldsmobile remained pending in the circuit court, and the circuit court, while losing jurisdiction over the strict liability counts by the plaintiff's filing of a notice of appeal, retained jurisdiction over the separate and distinct negligence cause of action.

■ The substantive issue raised by plaintiff on the summary judgment for Leslie Oldsmobile is whether a genuine issue of material fact exists on the record. We must resolve several collateral issues raised by plaintiff first, before proceeding to our analysis of the main issue. In her reply brief, plaintiff asserts for the first time that the affidavits of Leslie Oldsmobile's employees filed with the renewed motion for summary judgment are not competent evidence because they "violate the hearsay rule." Suffice it to say that points raised for the first time in the reply brief are waived under Supreme Court Rule 341(e)(7) (103 Ill. 2d 341(e)(7); *Jenkins v. Wu* (1984), 102 Ill. 2d 468, 483, 468 N.E.2d 1162), that this issue was not raised in the trial court and cannot be raised for the first time on appeal (*George W. Kennedy Construction Co. v. City of Chicago* (1986), 112 Ill. 2d 70, 77, 491 N.E.2d 1160), and that the sufficiency of an affidavit cannot be tested for the first time on appeal where no objection was made in the trial court (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398, 415 N.E.2d 397).

■ Plaintiff also appears to argue that her prior discovery deposition is still a part of the record and might be admissible in a future trial by any of the defendants as evidence of an admission against a party opponent. The trial court, however, was correct in determining that the decedent's discovery deposition will not be admissible at trial under Supreme Court Rule 212, as only an evidence deposition may be used in place of live testimony upon the death of a deponent. (87 Ill. 2d R. 212; see Ill. Ann. Stat., ch. 110A, par. 212(a), Historical and Practice Notes, at 302 (Smith-Hurd 1985).) This also means that the deposition could not be considered in ruling on the motion for summary judgment as, on a motion for summary judgment, the facts to be considered by the court are evidentiary facts and evidence which is inadmissible at trial is not admissible in ruling on a motion for summary judgment. *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 8, 475 N.E.2d 549.

Returning to the main issue raised of whether there is a genuine issue of material fact to preclude summary judgment, we must make this determination from the pleadings, depositions, affidavits, and admissions on file. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) Keeping in mind that we can no longer consider plaintiff's deposition testimony, we must look to plaintiff's pertinent pleadings, the excerpts of

Professor Harvey's deposition, and the two affidavits filed with Leslie Oldsmobile's renewed motion for summary judgment. The negligence count against Leslie Oldsmobile alleges, in pertinent part, that on April 13, 1981, after receiving a complete major tune-up, plaintiff discovered the automobile would lurch forward or backward suddenly and uncontrollably, that she gave notice of this to Leslie Oldsmobile, and that even after returning it to correct the problem, the same problem was occurring and she so notified Leslie Oldsmobile again. She further alleged that Leslie Oldsmobile was negligent in failing to properly service and/or repair the automobile and in failing to properly inspect and test the automobile before delivering it to her.

Leslie Oldsmobile contends that the deposition of Professor Harvey and the affidavits of its two employees stand uncontradicted and, as plaintiff filed no counteraffidavits, there were no genuine issues of material fact and the court properly granted its motion for summary judgment. It is well-established that if a party moving for summary judgment supplies facts which, if not contradicted, would entitle such party to a judgment as a matter of law, the opposing party cannot rely on his pleadings alone to raise issues of material fact. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240-41, 489 N.E.2d 867.

From our careful review of the pleadings, the affidavits, and the excerpts of the Harvey deposition, we conclude that although some material facts in the Harvey deposition and the affidavits are uncontradicted, there are still remaining certain genuine issues of material fact as set forth in plaintiff's complaint which operate to defeat Leslie Oldsmobile's motion for summary judgment. The Harvey deposition, originally filed by General Motors, does not present facts relating to the servicing of the plaintiff's automobile by Leslie Oldsmobile, but details the inspection of certain parts and systems in the automobile more pertinent to the strict products liability claim. While the two affidavits of Leslie Oldsmobile's employees do relate to the servicing of plaintiff's automobile, their affidavits are essentially limited to establishing the fact that plaintiff never complained to the employees, nor do their records disclose, that her car lurched when put into gear. While plaintiff filed no counteraffidavit to contradict these affidavits and her allegations in the pleadings are insufficient to rebut these affidavits on this point, the affidavits are insufficient to defeat plaintiff's claim entirely and entitle Leslie Oldsmobile to summary judgment.

The allegations in plaintiff's complaint that the lurching forward or backward first occurred after servicing of her automobile by Leslie Oldsmobile on April 13, 1981, and that Leslie Oldsmobile was negli-

gent in servicing, repairing, and failing to inspect and test the automobile before delivering it to plaintiff, sufficiently set forth material fact questions of liability that remain unaffected by Leslie Oldsmobile's deposition evidence and affidavits. These factual issues were not covered in the deposition or the affidavits. While we express no opinion on whether plaintiff will be able to prove her negligence claim at trial, we conclude for the foregoing reasons that summary judgment was improperly granted for Leslie Oldsmobile on the negligence count.

The summary judgment in favor of General Motors, Hejhal Oldsmobile, and Leslie Oldsmobile on the strict liability counts is affirmed. Summary judgment in favor of Leslie Oldsmobile on the negligence count is reversed, and the cause is remanded.

Affirmed in part, reversed in part and remanded.

NASH and UNVERZAGT, JJ., concur.